## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| Chevron Intellectual Property LLC, and Chevron U.S.A. Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>Sariel Petroleum, LLC, Arael Doolittle, Alvin Diaz, and Arnold Salinas,<br><br>Defendants. | Case No. 4:18-cv-158 |

## ORIGINAL COMPLAINT AND APPLICATION FOR
## PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

Plaintiffs Chevron Intellectual Property LLC and Chevron U.S.A. Inc. (collectively, "Chevron")[1] file this Original Complaint and Application for Preliminary and Permanent Injunctive Relief[2] and seek damages (trebled), profits, attorneys' fees, and costs, against Defendants Sariel Petroleum, LLC, Arael Doolittle, Alvin Diaz, and Arnold Salinas (collectively, "the Sariel Defendants").

## INTRODUCTION

1.     This case involves the Sariel Defendants' blatant, illegal and unauthorized use of Chevron's world-famous trademarks to create an entirely

---

[1] Although Chevron Intellectual Property LLC and Chevron U.S.A. Inc. are separate and distinct entities in all respects, for simplicity in this pleading only, the Complaint and Application refer to both entities as "Chevron."

[2] Chevron will submit a brief in support of its Application for Preliminary and Permanent Injunctive Relief with supporting declarations from company witnesses and third parties after Defendants receive notice of the lawsuit.

fraudulent business for the purpose of duping third parties into contracting with them. To perpetuate their deception, one or more of the Sariel Defendants created and disseminated letters on bogus letterhead to falsely represent themselves as associated with various "Chevron" entities; sent emails using the illegitimate domain name <chevronus.com> to create the illusion that actual "Chevron" employees had relationships with the Sariel Defendants; falsely represented to businesses that "Chevron" was involved in various oil-and-gas trading transactions; misrepresented their ability to sell "Chevron" products; and, on information and belief, opened one or more bank accounts using the fictitious name "Chevron USA Products" to facilitate fund transfers.

2.      None of this unlawful activity by the Sariel Defendants was sanctioned, authorized or licensed by Chevron. As a result, this suit seeks to stop the Sariel Defendants from further infringing Chevron's trademarks, and from continuing the misrepresentation and fraud that is causing Chevron irreparable harm and that may cause harm to innocent third parties.

3.      Specifically, Chevron recently learned from several parties that one or more of the Sariel Defendants misrepresented themselves as being affiliated with or employed by "Chevron." In one instance, one or more of the Sariel Defendants misrepresented to others that Chevron was involved in a proposed oil-and-gas trading transaction in Asia. In that proposed transaction, one or more of the Sariel Defendants purported to have access to refined products from "Chevron" through a supposed Chevron distillate-product trader, Defendant Alvin Diaz. Chevron has no

commercial relationship with the Sariel Defendants, and Defendant Diaz has never been employed by Chevron in any capacity.

4.      In another situation, Chevron learned of letters created by one or more Sariel Defendants on bogus "Chevron" letterhead. Two of the fictitious letters were purportedly signed by Defendant Alvin Diaz—again posing as a Chevron "Distillates Trader"—and appear to have been created by Defendant Arael Doolittle. Defendant Diaz has never been employed by Chevron in any capacity, and Chevron has never authorized Defendant Doolittle to create letterhead using Chevron's name.

5.      One or more of the Sariel Defendants used fake "Chevron" letterhead to impose prepayment and other requirements on at least one third party, Avalant International Limited ("Avalant"). Then, after Avalant had deposited a significant amount of money into a joint bank account with Sariel Petroleum as instructed by them, one or more of the Sariel Defendants used fake "Chevron" letterhead to inform Avalant that Chevron (a) was unable to supply Avalant's fuel needs owing to Hurricane Harvey and (b) allegedly hoped to do business with Avalant for several years to come. One or more of the Sariel Defendants disseminated the fake letters to support an association with Chevron and access to Chevron products to lure Avalant into commercial transactions. Chevron has never had commercial relationships with the Sariel Defendants.

## PARTIES

6.      Plaintiff Chevron Intellectual Property LLC is a Delaware limited

liability company, with its principal place of business at 6001 Bollinger Canyon Road, San Ramon, California 94583. Chevron Intellectual Property LLC is the owner of the Chevron Trademarks identified below.

7.     Plaintiff Chevron U.S.A. Inc. is a Pennsylvania corporation, with its principal place of business at 6001 Bollinger Canyon Road, San Ramon, California 94583. Chevron U.S.A. Inc. is a primary licensee of the Chevron Trademarks identified below.

8.     Defendant Sariel Petroleum, LLC is a Wyoming limited liability company having a business address of 1620 Central Avenue, Suite 202, Cheyenne, Wyoming, 82001. Defendant Sariel Petroleum LLC is registered as a foreign company doing business in the State of Texas; has a registered agent in Texas— Bryan Martinez, 3711 Medical Drive, Apartment 717, San Antonio, Texas 78229; has filings with the Texas Secretary of State's office listing managers and directors at the address P.O. Box 820175, Houston, Texas 77282; has a website, www.sarielpetro.com (last accessed on Jan. 19, 2018); represents that "Sariel Petroleum is an independent upstream company with international operations in Trading, Exploration and Production, Oil Sands Mining and Integrated Gas"; and is based in Houston, Texas. On information and belief, Defendant Sariel Petroleum LLC and/or members of its management are actively participating in a scheme with one or more of the other Sariel Defendants to dupe the public by falsely claiming relationships between Chevron and Defendant Sariel Petroleum.

9.     Defendant Arael Doolittle is listed as a "Member" of Sariel Petroleum,

LLC, having a last known address of 7922 Hickory Mill Court, Houston, Texas 77095. On information and belief, Defendant Doolittle created one or more letters on "Chevron Products Company A Division of Chevron U.S.A. Inc." letterhead, intending such letters to be disseminated in the trade to foster the false claim that the Sariel Defendants work for or have relationships with Chevron. Defendant Doolittle otherwise is believed to be actively participating in a scheme with one or more of the other Sariel Defendants to dupe the public by falsely claiming relationships with Chevron.

10.     Defendant Alvin Diaz is believed to be holding himself out to the public as a Chevron employee, having a last known address of 3501 Gramercy Street, Houston, Texas, 77025. On information and belief, Defendant Diaz is actively participating in a scheme with one or more of the other Sariel Defendants to dupe the public by falsely claiming that they have relationships with Chevron, including that Defendant Diaz is himself employed by "Chevron" as indicated by the use of Defendant Diaz's name on letters bearing "Chevron Products Company  A Division of Chevron U.S.A. Inc." letterhead and by use of the email address alvind@chevronus.com.

11.     Defendant Arnold Salinas is believed to be an agent of or accomplice to Defendants Doolittle and Diaz, having a last known address of 3833 Cummins Street, Apartment 1124, Houston, Texas 77027. On information and belief, Defendant Salinas is actively participating in a scheme with one or more of the other Sariel Defendants to dupe the public by falsely claiming relationships exist

between Chevron and one or more other Sariel Defendants.

12.     Chevron is informed and believes that at times relevant, the Sariel Defendants worked together to defraud the public, falsely using the famous Chevron Trademarks on letterhead, in email addresses, and as the name associated with domain names and one or more bank accounts to operate and generate interest in the Sariel Defendants' oil-and-gas trading business in Houston, Texas, all without authorization from Chevron and all in a manner intended to trade on the Chevron Trademarks and to deceive the public.

## <u>JURISDICTION</u>

13.     This Court has original subject matter jurisdiction over this trademark action pursuant to 28 U.S.C. § 1338(a) and 15 U.S.C. § 1121. This Court has related claim jurisdiction over the state law claims pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367.

14.     This Court has personal jurisdiction over the Sariel Defendants because, upon information and belief, Defendant Sariel maintains a place of business in the State of Texas within this judicial district, and Defendants Doolittle, Diaz, and Salinas each reside in the State of Texas within this judicial district.

15.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and a substantial part of the property that is the subject of the action is situated in this district.

## FACTS RELEVANT TO ALL CAUSES

### Chevron's Famous Trademarks

16.     Chevron is a global leader among integrated energy companies with operations comprising upstream exploration and production, midstream transportation, power and trading, downstream manufacturing and retail, and technology.

17.     Chevron and its products and services are recognized for their quality, performance and technology around the world.

18.     Chevron Intellectual Property LLC is the owner of and Chevron U.S.A. Inc. is a primary licensee of the CHEVRON mark and the CHEVRON Logo including, among many others, the following federally registered trademarks (the "Chevron Trademarks"):

| Ex. No. | Trademark | U.S. Reg. No. & Date | Goods & Services |
|---|---|---|---|
| 1 |  | 3,450,887<br><br>June 30, 2014 | Int'l Class: 04<br><br>"petroleum and petroleum-derived products . . ." |
| 2 |  | 3,455,273<br><br>July 11, 2014 | Int'l Class: 04<br><br>"petroleum and petroleum-derived products . . ." |

| Ex. No. | Trademark | U.S. Reg. No. & Date | Goods & Services |
|---|---|---|---|
| 3 | Chevron | 3,450,910<br><br>June 30, 2014 | Int'l Class: 04<br><br>"petroleum and petroleum-derived products . . ." |
| 4 | CHEVRON | 416,133<br><br>Aug. 28, 1945<br><br>(last renewed Aug. 28, 2015) | Int'l Class: 04<br><br>"motor fuels for use in internal combustion engines" |
| 5 | Chevron | 972,729<br><br>May 8, 1972<br><br>(last renewed Nov. 13, 2013) | Int'l Class: 04<br><br>"petroleum and products derived from petroleum . . ." |
| 6 | Chevron | 2,397,626<br><br>Oct. 24, 2000<br><br>(last renewed Oct. 24, 2010) | Int'l Class: 04<br><br>"petroleum and products derived from petroleum . . ." |
| 7 | CHEVRON | 658,682<br><br>Feb. 25, 1958<br><br>(last renewed Feb. 25, 2008) | Int'l Class: 04<br><br>"petroleum waxes, white oils, and petrolataums, motor fuels, lubricating oils and greases . . ." |

19.    Exhibits 1 through 7 are copies of the above Registrations with prints from the U.S. Patent and Trademark Office records confirming the Registrations'

8

current active status and ownership by Plaintiff Chevron Intellectual Property LLC. These Registrations are valid, subsisting, and in full force and effect. In addition, the marks covered by Registration Nos. 416,133, 972,729, 2,397,626, and 658,682 (Exs. 4-7) have been registered for over five years and are incontestable pursuant to 15 U.S.C. § 1065.

20. The CHEVRON word mark has been in continuous and extensive use in commerce since at least as early as 1935. The CHEVRON logo mark has been in continuous and extensive use in commerce (with minor design alterations over the years) since at least as early as 1969.

21. Chevron has expended large sums of money over many years advertising goods and services under the Chevron Trademarks throughout the United States. As a result of this long term use and extensive promotion of the Chevron Trademarks, these marks have become well-known to the trade and the general public throughout the United States, and Chevron has established extensive goodwill and public recognition in and of the marks as exclusive identifiers of Chevron's goods and services. The Chevron Trademarks are widely recognized by the general consuming public of the United States as a designation of the source of Chevron's goods and services and have become famous.

**The Sariel Defendants' Unauthorized Use of the Chevron Trademarks**

22. Chevron recently became aware, through more than one source, that one or more of the Sariel Defendants are falsely holding themselves out as having a

relationship with Chevron and are using the Chevron Trademarks to bolster the Sariel Defendants' reputation and gain trust and develop business relationships in the oil-and-gas trading market, to dupe the public and to trade upon the reputation of Chevron. Specifically, the Sariel Defendants' fraudulent activities include:

      a.    One or more of the Sariel Defendants registered the domain name <chevronus.com> using a privacy-protection service WhoisGuard through the domain registrar, Namecheap, and are using that domain name for email correspondence, thus falsely representing and suggesting that the sender of the email (*e.g.*, alvind@chevronus.com) works for Chevron;

      b.    One or more of the Sariel Defendants created letterhead bearing the Chevron Trademarks and used that bogus letterhead in commercial oil-and-gas trading activities, falsely representing that the sender of the letter on such letterhead is currently employed by Chevron; that the correspondence represents legitimate Chevron business; and that the recipient of the correspondence is engaged in legitimate business with Chevron;

      c.    One or more of the Sariel Defendants have utilized the name "CHEVRON USA" on invoices pertaining to oil-and-gas trading activities that have nothing to do with Chevron, so that the invoices could then be shown to businesses in the oil-and-gas trade to support the Sariel Defendants' false representation of an affiliation or

relationship with Chevron;

    d.    Defendant Diaz opened a bank account at Wells Fargo using the name "Chevron USA Products" when Chevron has nothing to do with that bank account;

    e.    One or more of the Sariel Defendants have advised one or more businesses in the oil-and-gas trade that Defendant Alvin Diaz is employed by Chevron and works with one or more of the other Sariel Defendants to secure Chevron products, when Defendant Diaz is not employed by Chevron;

    f.    One or more of the Sariel Defendants have advised one or more businesses in the oil-and-gas trade that they have a relationship with Chevron that enables them to secure Chevron products, when no such relationship exists;

    g.    One or more of the Sariel Defendants have advised one or more businesses involved in an oil-and-gas trading transaction in Asia that "Sariel … contracts with Chevron"; that money would be paid "for Chevron into [a Houston attorney] Jason Ostrom Morris' client account"; that a party will "procure an SBLC in favour of Chevron"; that "Chevron will… then produce the oil products"; and that "[t]he Chevron individual involved is a distillate product trader named [defendant] Alvin Diaz…based in Houston;" and

11

h.     One or more of the Sariel Defendants have advised one or more businesses involved in an oil-and-gas trading transaction that, for logistical reasons, Chevron would be unable to deliver product on the schedule devised but that it had entered into a product swap with Lansing NGL Services, a midstream company based in Illinois.

23.    The Sariel Defendants are not licensed, authorized, or otherwise permitted by Chevron to use or otherwise display the Chevron Trademarks and all such use fraudulently and in bad faith trades upon the goodwill associated with such marks.

24.    Attached as Exhibits as noted below are true and correct copies of materials provided to Chevron regarding the Sariel Defendants' activities as described above:

a.     Exhibit 8 is a letter dated September 5, 2017 provided to a company in the oil-and-gas trade on the bogus letterhead displaying the Chevron Trademarks created by one or more of the Sariel Defendants and purporting to be signed by an individual named "Leny Rodriguez" in the role of "Distillates Trader" at "Chevron, INC USA." No one by the name of "Leny Rodriguez" was employed by Chevron as a "Distillates Trader" at the time of the letter.

b.     Exhibit 9 is a letter dated October 13, 2017 provided to a company in the oil-and-gas trade on the bogus letterhead displaying the Chevron Trademarks created by one or more of the Sariel

Defendants and purporting to be e-signed by an individual named "Alvin Diaz" in the role of "Distillates Trader" at "Chevron, INC USA." No one by the name of "Alvin Diaz" was employed by Chevron as a "Distillates Trader" at the time of the letter.

      c.    Exhibit 10 is a letter dated October 31, 2017 provided to a company in the oil-and-gas trade on the bogus letterhead displaying Chevron Trademarks created by one or more of the Sariel Defendants and purporting to be e-signed by an individual named "Alvin Diaz" in the role of "Distillates Trader" at "Chevron, INC USA." No one by the name of "Alvin Diaz" was employed by Chevron as a "Distillates Trader" at the time of the letter.

      d.    Exhibit 11 is an invoice dated October 29, 2017 referencing "CHEVRON USA" in connection with "SARIEL PETROLEUM, LLC." Chevron has not engaged in any commercial transactions with Defendant Sariel Petroleum.

      e.    Exhibit 12 is an email from Defendant Diaz using the address: alvind@chevronus.com, which falsely appears to be a Chevron company email address. Defendant Diaz is not an employee of Chevron, and alvind@chevronus.com is not a legitimate Chevron email address.

      f.    Exhibit 13 is a BBVA Compass bank document showing transfers to a bank account under the name Chevron USA Products at

Wells Fargo. This "Chevron" account was not opened or authorized by Chevron and is not controlled, owned or related to Chevron.

g.      Exhibit 14 is an email sent to Chevron referring to Chevron's purported involvement through Defendant Diaz in an oil-and-gas trading transaction in Asia.

h.      Exhibit 15 is a true and correct copy of WHOIS information dated as of January 4, 2018 showing that the domain name <chevronus.com> was registered using the privacy-protection service WhoisGuard through the domain registrar, Namecheap.

i.      Exhibit 16 is a true and correct copy of the site accessible by the domain name <chevronus.com>, a registrar-generated, pay-per-click site that has links to Chevron-related search terms.

j.      Exhibit 17 is an email sent to Chevron by Wells Fargo confirming that Defendant Alvin Diaz opened the "Chevron USA Products" account at a Wells Fargo branch in Houston, Texas.

25.    The Sariel Defendants, by these activities and through the unauthorized use of the Chevron Trademarks, are falsely creating the impression that the Sariel Defendants are associated with, employed by, licensed by, or otherwise approved by Chevron, and thereby have deceived and defrauded the public and unfairly traded on Chevron's reputation, and will continue to do so unless enjoined by this Court.

26.     The Sariel Defendants' unauthorized use of the Chevron Trademarks is likely to cause confusion, mistake, and/or deceive the trade, customers and potential customers of the parties, as to some presumed but nonexistent affiliation, connection, sponsorship, and/or association of the Sariel Defendants with Chevron, and/or as to the origin, sponsorship, or approval of the Sariel Defendants' products and services by Chevron.

27.     The Sariel Defendants' unauthorized use of Chevron Trademarks falsely designates the origin of the Sariel Defendants' products and services, and falsely and misleadingly describes and represents the Sariel Defendants and their products and services.

28.     The Sariel Defendants' unauthorized use of Chevron Trademarks enables the Sariel Defendants to attract attention to their business and products and services, and to trade on and receive the benefit of the goodwill built up by Chevron at great labor and expense over many, many years, and to gain acceptance for their products and services not on their own merits, but as a free ride on the reputation and goodwill of Chevron and their well-known and valuable marks.

29.     The Sariel Defendants have been unjustly enriched at the expense of Chevron by the Sariel Defendants' unauthorized use of the Chevron Trademarks.

30.     The Sariel Defendants' unauthorized use of Chevron Trademarks places the valuable reputation and goodwill of the Chevron Trademarks improperly in the hands of the Sariel Defendants.

31.     The Sariel Defendants' unauthorized use of Chevron Trademarks falsely promotes the Sariel Defendants as being affiliated with Chevron and damages Chevron's goodwill by falsely associating Chevron with the Sariel Defendants.

32.     Unless this Court enjoins these acts of the Sariel Defendants, these acts will continue to cause irreparable injury to Chevron and to the public, for which there is no adequate remedy at law.

## COUNT I
**(Counterfeiting of Federally Registered Trademarks
under 15 U.S.C. §§ 1114, 1116)**

33.     Chevron repeats and realleges, as if fully set forth here, each and every allegation contained in the paragraphs above.

34.     The Sariel Defendants' unauthorized use of the Chevron Trademarks in connection with their business as described above constitutes use in commerce of a counterfeit mark in violation of Sections 32 and 34 of the Lanham Act, 15 U.S.C. §§ 1114 and 1116.

35.     The Sariel Defendants' actions as described herein were undertaken with full knowledge of Chevron's rights, thus constituting willful counterfeiting.

36.     Chevron is entitled to the remedies available under 15 U.S.C. §§ 1116 and 1117 to address the willful counterfeiting by the Sariel Defendants. Such remedies include treble damages, statutory damages, and recovery of attorneys' fees.

37.     The acts of the Sariel Defendants described above have caused and, without judicial intervention, will continue to cause Chevron immediate irreparable

16

harm for which there is no adequate remedy at law.

## COUNT II
**(Infringement of Federally Registered Trademarks under 15 U.S.C. §§ 1114)**

38.     Chevron repeats and realleges, as if fully set forth here, each and every allegation contained in the paragraphs above.

39.     The Sariel Defendants' unauthorized use of the Chevron Trademarks in connection with their business as described above constitutes use in commerce of a reproduction of a registered mark that is likely to cause confusion and mistake and to deceive consumers as to the source or origin of the Sariel Defendants' products and services and/or the Sariel Defendants' business in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

40.     The Sariel Defendants' unauthorized use of the Chevron Trademarks as described above constitutes infringement of Chevron's federally registered trademarks in violation of  Sections 32 and 34  of the Lanham Act, 15 U.S.C. § 1114.

41.     The Sariel Defendants' actions as described here were undertaken with full knowledge of Chevron's rights, thus constituting willful infringement.

42.     The Sariel Defendants used the Chevron Trademarks with full knowledge of Chevron's rights, and in bad faith with willful and deliberate intent to trade on Chevron's substantial recognition, reputation, and goodwill. In view of the willful nature of the Sariel Defendants' infringement, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a), entitling Chevron to recover fees, among other monetary remedies.

43.     The acts of the Sariel Defendants described above have caused and, without judicial intervention, will continue to cause Chevron immediate irreparable harm for which there is no adequate remedy at law.

## COUNT III
### (Unfair Competition under 15 U.S.C. § 1125(a))

44.     Chevron repeats and realleges, as if fully set forth here, each and every allegation contained in the paragraphs above.

45.     The Sariel Defendants' unauthorized use of the Chevron Trademarks constitutes use in commerce of a false or misleading designation of origin which is likely to deceive, to cause mistake or to cause confusion by leading consumers to believe that the Sariel Defendants have an affiliation with Chevron, or are sponsored or approved of by Chevron, or are otherwise associated with or have obtained permission from Chevron.

46.     The acts of the Sariel Defendants described above constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

47.     The Sariel Defendants' actions as described above were undertaken with full knowledge of Chevron's rights, thus constituting willful unfair competition.

48.     In view of the willful nature of the Sariel Defendants' unfair competition, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a), entitling Chevron to recover fees, among other monetary remedies.

49.     The acts of the Sariel Defendants described above have caused and, without judicial intervention, will continue to cause Chevron immediate irreparable

harm for which there is no adequate remedy at law.

## COUNT IV
### (Dilution under 15 U.S.C. § 1125(c))

50.     Chevron repeats and realleges, as if fully set forth here, each and every allegation contained in the paragraphs above.

51.     This claim arises under federal law for trademark dilution with regard to the Chevron Trademarks.

52.     The Chevron Trademarks are famous and distinctive, inherently or through acquired distinctiveness, throughout the United States.

53.     The Sariel Defendants' unauthorized commercial use of the Chevron Trademarks began after the marks became famous.

54.     The Sariel Defendants' unauthorized use of the Chevron Trademarks is likely to cause the dilution of said marks by blurring and/or tarnishment.

55.     The acts of the Sariel Defendants described above constitute dilution under federal law in violation of 15 U.S.C. § 1125(c).

56.     The acts of the Sariel Defendants described above have caused and, without judicial intervention, will continue to cause Chevron immediate irreparable harm for which there is no adequate remedy at law.

## COUNT V
### (Cyberpiracy under 15 U.S.C. § 1125(d))

57.     Upon information and belief, one or more of the Sariel Defendants registered the domain name <chevronus.com> and used one or more email addresses associated with that domain in an effort to trick recipients of the emails

into believing that the emails came from an authorized Chevron account.

58.     The domain name <chevronus.com> is identical or confusingly similar to or dilutive of the Chevron Trademarks.

59.     The Sariel Defendants have no intellectual property rights in the domain name <chevronus.com>.

60.     The domain name <chevronus.com> does not consist of the legal name of any of the Sariel Defendants or a name that is otherwise commonly used to identify any of the Sariel Defendants.

61.     The site currently accessible by the domain name <chevronus.com> is a registrar-generated, pay-per-click site that has links to Chevron-related search terms as shown in Exhibit 16.

62.     The Sariel Defendants have not used the Chevron Trademarks in connection with the domain name <chevronus.com> in any bona-fide noncommercial or fair-use manner.

63.     The Sariel Defendants intended to use the domain name <chevronus.com> to deceive consumers and harm the goodwill represented by the mark for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the site.

64.     The acts of the Sariel Defendants described above constitute cybersquatting under federal law in violation of 15 U.S.C. § 1125(d).

65.     The acts of the Sariel Defendants described above have caused and, without judicial intervention, will continue to cause Chevron immediate irreparable

harm for which there is no adequate remedy at law.

## COUNT VI
### (Unfair Competition under Texas Common Law)

66.     Chevron repeats and realleges, as if fully set forth here, each and every allegation contained in the paragraphs above.

67.     This claim arises under Texas common law for unfair competition, namely the unauthorized and confusing use of the Chevron Trademarks in a manner designed to misrepresent the Sariel Defendants' affiliation with Chevron.

68.     The Sariel Defendants' unauthorized use of the Chevron Trademarks in Texas constitutes passing off and creates a likelihood of confusion, mistake, or deception.

69.     By reason of the Sariel Defendants' wrongful acts alleged above, Chevron has suffered and will continue to suffer damage to business, trade, reputation, and goodwill as a result of the erroneous perception that the goods and services of the Sariel Defendants are affiliated with, sponsored by, approved by, or originate from Chevron.

70.     The acts of the Sariel Defendants described above constitute unfair competition in violation of Texas common law.

71.     The Sariel Defendants' actions as described above were undertaken with full knowledge of Chevron's rights, thus constituting willful unfair competition.

72.     The acts of the Sariel Defendants described above have caused and, without judicial intervention, will continue to cause Chevron immediate irreparable

harm for which there is no adequate remedy at law.

## COUNT VII
### (Dilution under Tex. Bus. &  Com. Code § 16.103)

73.     Chevron repeats and realleges, as if fully set forth here, each and every allegation contained in the paragraphs above.

74.     This claim arises under Texas law for trademark dilution with regard to the Chevron Trademarks.

75.     The Chevron Trademarks are famous and distinctive, inherently or through acquired distinctiveness, in Texas and elsewhere throughout the world.

76.     The Sariel Defendants' infringing commercial use of the Chevron Trademarks began after the Chevron Trademarks became famous.

77.     The Sariel Defendants' infringing commercial use of the Chevron Trademarks is likely to cause dilution of Chevron's famous marks.

78.     The acts of the Sariel Defendants described above constitute dilution under Texas law in violation of Tex. Bus. & Com. Code § 16.103.

79.     The acts of the Sariel Defendants described above have caused and, without judicial intervention, will continue to cause Chevron immediate irreparable harm for which there is no adequate remedy at law.

## COUNT VIII
### (Civil Conspiracy under Texas Common Law)

80.     Chevron repeats and re-alleges, as if fully set forth here, each and every allegation contained in the paragraphs above.

81.     This claim arises under Texas common law for civil conspiracy with regard to the Chevron Trademarks.

22

82.     On information and belief, two or more of the Sariel Defendants are working in active concert with one another to sell petroleum products to third parties using the Chevron Trademarks, as alleged above, Counts I-VII.

83.     On information and belief, two or more of the Sariel Defendants have had numerous meetings of the mind on their unlawful purposes, including, for example, entering into commercial transactions with third parties under the false pretense that the Sariel Defendants worked for, represented, or dealt with, Chevron using Chevron Trademarks.

84.     On information and belief, two or more of the Sariel Defendants have taken overt, active steps to accomplish their unlawful purposes (*see* Counts I-VII, *supra*), using unlawful means, including, for example, preparing bogus letterhead displaying counterfeit Chevron Trademarks, registering the domain name <chevronus.com>, opening a bank account at Wells Fargo under the name "Chevron USA Products," and meeting with one or more potential customers or licensees posing as Chevron employees, agents, or "Distillates Traders."

85.     As a proximate result of the civil conspiracy carried out by two or more of the Sariel Defendants, Chevron has suffered damages.

86.     Accordingly, on information and belief, two of more of the Sariel Defendants have combined in a civil conspiracy to accomplish unlawful purposes by unlawful means as set forth above, in violation of Texas common law.

## <u>COUNT IX</u>
### (Preliminary and Permanent Injunction)

87.     The Sariel Defendants have no viable defense or explanation for any of

23

their fraudulent activities, and Chevron is likely to succeed on *all* of its claims. However, for purposes of a preliminary injunction, Chevron need only rely upon its trademark counterfeiting, infringement, dilution and related unfair competition claims, each of which is more than sufficient to justify the requested injunctive relief.

**Chevron Is Likely to Succeed on Its**
**Trademark Counterfeiting and Infringement Claims**

88.     The Court should issue a preliminary and permanent injunction prohibiting the Sariel Defendants from using the Chevron Trademarks to prevent immediate and irreparable harm to Chevron caused by Defendants' improper and unlawful actions. Chevron's ownership of legally protectable marks is established by the evidence of ownership of Registrations submitted with this Complaint and Application for Preliminary and Permanent Injunctive Relief (*see* Exs. 1-7), which Registrations constitute *prima facie* evidence of, *inter alia*, the validity of the Chevron Trademarks and Chevron's exclusive right to use the registered marks in commerce on or in connection with the goods or services specified in the Registrations. 15 U.S.C. § 1057. Further, Chevron's incontestable Registrations, are *conclusive* proof of Chevron's rights. 15 U.S.C. § 1115(b).

89.     Likelihood of confusion is irrefutable here. The Sariel Defendants' fraudulent use of the famous, registered Chevron Trademarks is a blatant scheme to deceive the public that the Sariel Defendants are associated with Chevron when they are not. Evidence submitted with this Complaint and Application for Preliminary and Permanent Injunctive Relief shows that even a law firm that

represents Chevron was misled in thinking that the Sariel Defendants were affiliated with Chevron. (*See* Ex. 14.) The Sariel Defendants' letters and email address constitute use of counterfeit Chevron Trademarks. 15 U.S.C. § 1127 (defining "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark").

### Chevron Is Likely to Succeed on Its Federal and State Dilution Claims and on Its Unfair Competition Claims

90.     Chevron is likely to succeed on the merits of its dilution claims. The Chevron Trademarks clearly meet the standard of fame as marks that are widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. The marks are federally registered and inherently strong, extensively advertised and promoted, and have been in use for decades throughout Texas, the United States, and the world. (Ex. 1-7.) Indeed, the fact that the Sariel Defendants saw fit to copy and distribute letters pretending to be associated with Chevron shows that the Sariel Defendants believe the Chevron Trademarks are so famous that the mere use of the name Chevron will lend significant credibility to their trading activities and garner business for the Sariel Defendants.

91.     The Sariel Defendants' use of the Chevron Trademarks constitutes dilution because such use associates the marks with unauthorized and unscrupulous persons who see fit to create fake letterhead and use a fake email address. At least in its dealings with Avalant, as discussed herein, Chevron's reputation was irreparably harmed by falsely associating Chevron with a

fraudulent and flawed transaction. Indeed, the Sariel Defendants' correspondence is unprofessional, using smiley faces and poor grammar. (Ex. 8-10.) Unless stopped, the Sariel Defendants' negative reputation generated using the Chevron Trademarks will now also be associated with Chevron.

92.     Chevron also is likely to succeed on its federal and state unfair competition claims for the same reasons as described above because unfair competition claims are governed by the same standard as those for trademark infringement, *e.g.*, the likelihood of confusion.

**Chevron Will Be Irreparably Injured Absent an Injunction**

93.     The Sariel Defendants' fraudulent use of the famous, registered Chevron Trademarks is a blatant scheme to deceive the public that the Sariel Defendants are associated with Chevron when they are not. There can be no doubt that immediate irreparable harm to Chevron will follow from the Sariel Defendants' continued use of fake Chevron letterhead, a fake <chevronus.com> email address, a fraudulently-obtained bank account in Chevron's name, and continued fraudulent representations to the industry and customers that the Sariel Defendants are working with Chevron, when they are not. Here, confusion is not only likely, it has already occurred, and further confusion is inevitable if the Sariel Defendants continue to falsely represent themselves as associated with Chevron.

94.     The harm caused to Chevron by the Sariel Defendants' unauthorized use of the Chevron Trademarks cannot easily be compensated through monetary damages. Chevron has no control over the quality of goods or services that the

Sariel Defendants fraudulently promote using the Chevron Trademarks. The fact that the Sariel Defendants are using the Chevron Trademarks in an intentionally deceptive and fraudulent manner demonstrates that the Sariel Defendants are not trustworthy. Those who choose to do business with the Sariel Defendants on the mistaken belief that they are affiliated with Chevron (or actually are part of Chevron) and are unhappy with the results of those transactions are likely to thereafter have a negative view of the Chevron Trademarks or to seek compensation from Chevron related to a failed transaction.

95.     In at least one transaction, the Sariel Defendants falsely blamed Chevron for the failure to deliver product in a timely manner. Even those who learn that the Sariel Defendants are not authorized are likely to have a lower opinion of Chevron because the Sariel Defendants' continued and blatant use of the Chevron Trademarks could suggest that Chevron is not taking care to monitor the marketplace and protect its brand. Chevron should be protected from the consequences and inevitable harm to its reputation, name, and goodwill that the Sariel Defendants' continued unauthorized use of the Chevron Trademarks is sure to generate.

96.     Chevron also will suffer irreparable injury because it is difficult to quantify in monetary terms the diminution in Chevron's goodwill and the harm to the distinctiveness of the Chevron Trademarks that were exclusively associated with Chevron prior to the Sariel Defendants' actions. Accordingly, the Sariel Defendants' unlawful and counterfeit use of the Chevron Trademarks will

irreparably harm Chevron in a manner that monetary damages cannot remedy.

### The Balance of Hardships Unquestionably Favors Chevron

97.     Chevron has spent three quarters of a century developing the Chevron Trademarks and building goodwill under the Chevron brand. In contrast, the Sariel Defendants have no legitimate rights in and are fraudulently trading on Chevron's good name and reputation to obtain financial gain from the unsuspecting public. The Sariel Defendants have been using fake letterhead and a deceptive email address in furtherance of their scheme to misrepresent this association with Chevron. Any harm to the Sariel Defendants in the event of a preliminary or permanent injunction is of their own doing and as a result of their decision to embark on a fraudulent scheme, rather than developing their business through legitimate means.

### An Injunction Is In the Public Interest

98.     Granting a preliminary injunction in this case serves the strong public interest in stopping fraud. Without an injunction by this Court, the Sariel Defendants' counterfeit and fraudulent use of the Chevron Trademarks will continue and will leave members of the public open to being victimized by the Sariel Defendants and confused in thinking that they are dealing with a trusted entity like Chevron, when they are not.   By preventing unauthorized use of the Chevron Trademarks and the deceptive and wrongful use of Chevron's name and reputation, an injunction will preserve the source-designating function and further the goals of federal and state trademark law, including preventing the confusion of the public.

## **PRAYER FOR RELIEF**

WHEREFORE, Chevron prays for the following relief:

A.     That this Court grant preliminary and permanent injunctions pursuant to the powers granted it under 15 U.S.C. § 1116, Fed. R. Civ. P. 65, and at common law, enjoining and restraining the Sariel Defendants and their principals, agents, servants, and employees, and all those working in concert with the Sariel Defendants, directly or indirectly from:

i.     further use of the Chevron Trademarks, the mark CHEVRON or the stylized CHEVRON design mark, either alone or in combination with other words, names, or symbols, including on or in connection with the advertisement, marketing, offering for sale, or sale of any products, and including the use of the name Chevron in any domain names, websites, URLs, or email addresses;

ii.     performing or committing any other acts falsely representing  products that are likely to cause confusion or mistake in the mind of the purchasing public, or to lead purchasers or the trade to believe that products come from, or are the products of, Chevron, or are somehow sponsored by, associated with, affiliated with, or connected with Chevron, or that there is some relation, association, affiliation, or connection between Chevron and Sariel Petroleum, LLC, Arael Doolittle, Alvin Diaz, and/or Arnold Salinas;

iii.    from using the domain name <chevronus.com> or any other domain name using the Chevron Trademarks;

iv.    from accessing or using any bank account under the name "Chevron USA Products" or any other named Chevron entity at any bank or other depository institution, including Wells Fargo Bank, N.A., and temporarily freezing all such accounts related to the Sariel Defendants until further notice;

v.    from passing off, inducing, or enabling others to sell or pass off, products or services as those of Chevron;

vi.    from destroying, altering, erasing, transferring, or otherwise disposing of any evidence, including any electronically stored information or metadata relating to use of the name "Chevron" or Chevron's Trademarks from any computer, laptop, tablet, smartphone, or other device;

vii.    from diluting the Chevron Trademarks; and

viii.    from otherwise unfairly competing with Chevron.

B.    That this Court, pursuant to the powers granted it under 15 U.S.C. § 1116(d), issue an order pursuant to 15 U.S.C. § 1116(a) providing for the seizure and removal from their premises of all of the Sariel Defendants' signage, property and goods bearing counterfeit trademarks; the means of making such marks; and records documenting the manufacture, sale, or receipt of things involved

in such violation, including, without limitation, computer and cell phone records and files;

C.      That this Court order the transfer of the domain name <chevronus.com> to Chevron;

D.      That this Court enter judgment that the Sariel Defendants have infringed Chevron's rights in and to the Chevron Trademarks, and have used and conspired to used false designations of origin, false descriptions, and false representations, in violation of at least 15 U.S.C. §§ 1114, 1116, and 1125(a), and related state claims, and has unfairly competed and conspired to unfairly compete with and otherwise injured Chevron by using the Chevron Trademarks in connection with the advertising, offering for sale, sale, handling, and distribution of products and services over which Chevron has no quality control in the manner complained of above;

D.      That this Court enter judgment that the Sariel Defendants' actions constitute counterfeiting of the Chevron Trademarks, in violation of at least 15 U.S.C. §§ 1114 and 1116;

E.      That this Court, pursuant to the powers granted it at least under 15 U.S.C. § 1117(b), award to Chevron and against the Sariel Defendants, treble damages and profits, and reasonable attorneys' fees because there has been intentional use of counterfeit or otherwise fraudulent marks or designations;

F.     That this Court, pursuant to the powers granted it at least under 15 U.S.C. § 1117, award to Chevron and against the Sariel Defendants, damages, profits, and costs;

G.     That this Court, pursuant to the powers granted it at least under 15 U.S.C. § 1117, award to Chevron and against the Sariel Defendants, Chevron's reasonable attorneys' fees because this is an exceptional case;

H.     That this Court, pursuant to the powers granted it at least under 15 U.S.C. § 1118 and at common law, order that all letterhead, files, invoices, merchandise, labels, banners, signs, clocks, prints, packages, wrappers, receptacles, advertisements, and any other tangible items in the possession of the Sariel Defendants bearing any of the Chevron Trademarks, or trademarks confusingly similar thereto, shall be delivered up and destroyed;

I.     That this Court award punitive and exemplary damages against the Sariel Defendants and in favor of Chevron by reason of the Sariel Defendants' intentional or reckless disregard for Chevron's rights and the rights of those defrauded;

J.     That this Court hold each of the Sariel Defendants jointly and severally liable for any underlying tort committed in furtherance of their civil conspiracy;

K.     That costs of this action be awarded to Chevron; and

L.     That this Court grant such other and further relief as it deems just and reasonable.

January 19, 2018

Respectfully Submitted,

By: */s/R. Bruce Hurley*

R. Bruce Hurley
Attorney In Charge
Texas Bar No. 10311400
S.D. Tex. Fed. ID No. 12335
John H. Barr, Jr.
Texas Bar No. 00783605
S.D. Tex. Fed. ID No. 15407
Christie Cardon
Texas Bar No. 24036326
S.D. Tex. Fed. ID No. 567834
Abby L. Parsons
Texas Bar No. 24094303
S.D. Tex. Fed. ID No. 2618689
**KING & SPALDING LLP**
1100 Louisiana St., Ste. 4000
Houston, Texas 77002
(Tel): 713-751-3200
(Fax): 713-751-3900
bhurley@kslaw.com
jbarr@kslaw.com
ccardon@kslaw.com
aparsons@kslaw.com

*Of Counsel:*

Kathleen E. McCarthy
**KING & SPALDING LLP**
1185 Avenue of the Americas
New York, New York 10036
Tel: (212) 556-2345
Fax: (212) 556-2222
kmccarthy@kslaw.com

*Attorneys for Plaintiffs*
*Chevron Intellectual Property LLC*
*Chevron U.S.A. Inc.*