# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| Chevron Intellectual Property LLC and Chevron U.S.A. Inc., | |
| Plaintiffs, | |
| v. | Case No. 4:18-cv-158 |
| Sariel Petroleum, LLC, Sariel Enterprises, LLC, Arael Doolittle, Tracy K. Martinez, Bryan Martinez, Alvin Diaz, Arnold Salinas, Ken Watson, Rodney Shank, and Michael Szucs, | |
| Defendants. | |

# PLAINTIFFS' SUPPLEMENTAL POST-TRIAL BRIEFING
## <u>AS ORDERED BY THIS COURT ON FEBRUARY 26, 2020 [DKT. 263]</u>

# **TABLE OF CONTENTS**

ARGUMENT ...................................................................................................1

I.   The Court Should Disregard the Jury's Verdict and Disgorge $3.2 Million in Profits ................................................................................................ 1

II.  The Disgorged Profits Should Be Enhanced Under the Lanham Act.................. 4

III. This Is an Exceptional Case Within the Meaning of the Lanham Act ............... 9

     A.   This case is exceptional based on Defendants' willful conduct........... 10

     B.   Defendants litigated the case in a bad-faith, unreasonable manner..... 11

          1.   Unreasonable discovery tactics ........................................ 11

          2.   Unreasonable litigation positions.................................... 13

IV. Chevron Is Entitled to Permanent Injunctive Relief Enjoining the Trial Defendants' Unlawful Conduct ................................................................... 14

     A.   Irreparable harm to Chevron is presumed or easily proven ................. 15

     B.   Money damages are inadequate to address the continued infringement and reputational harm....................................................................... 16

     C.   The balance of harms unquestionably favors Chevron ........................ 16

     D.   A permanent injunction is in the public interest...................................... 17

V.   The Court Should Award Statutory Damages and Attorneys' Fees and Costs for Willful Counterfeiting Against the Defaulting Defendants.......................... 17

VI. Chevron Is Entitled to Pre-Judgment Interest ....................................... 20

VII. Chevron Is Entitled to Post-Judgment Interest .................................... 22

CONCLUSION AND PRAYER FOR RELIEF .....................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Alpha Chi Omega,*
708 F.3d 614 (5th Cir. 2013) .......................................................................15, 16

*Adobe Sys. Inc. v. SKH Sys., Inc.,*
No. A-17-CA-018-SS, 2017 WL 6611513 (W.D. Tex. Dec. 27, 2017) ....................................................................................................................10

*Alliance for Good Gov't v. Coal. for Better Gov't,*
919 F.3d 291 (5th Cir. 2019) .......................................................................10, 12

*Am. Honda Motor Co., Inc. v. Two Wheel Corp.,*
918 F.2d 1060 (2d Cir. 1990) ...............................................................................21

*Anderson v. Baker,*
No. 4:14-CV-1211, 2014 WL 2434195 (S.D. Tex. May 28, 2014) ...................16

*Audi AG v. D'Amato,*
469 F.3d 534 (6th Cir. 2006) ................................................................................14

*Baker v. DeShong,*
821 F.3d 620 (5th Cir. 2016) ................................................................................10

*Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.,*
No. 4:17-CV-01400, 2019 WL 5684201 (S.D. Tex. Nov. 1, 2019)......................1

*Bos. Pizza Rests., L.P. v. Bay Three Ltd., Inc.,*
No. 3:12-CV-00426-O, 2013 WL 12123896 (N.D. Tex. July 16, 2013) ......................................................................................................................5

*Century 21 Real Estate Corp. v. Sandlin,*
846 F.2d 1175 (9th Cir. 1988) ..............................................................................14

*In Re Chinese-Manufactured Drywall Prod. Liab. Litig.,*
No. 09-2047, 2018 WL 279629 (E.D. La. Jan. 2, 2018) ....................................18

*Choice Hotels Int'l, Inc. v. Cheema Invs., LLC*,
    No. 3:11-CV-01762-O, 2013 WL 12125998 (N.D. Tex. Feb. 20,
    2013) ................................................................................................5

*ClearChoice Holdings, LLC v. Clear Choice Dental, PLLC*,
    No. H–14–035692016, 2016 WL 8136622 (S.D. Tex. Dec. 23,
    2016) ..........................................................................................10, 21

*Clearline Techs. Ltd. v. Cooper B–Line, Inc.*,
    948 F.Supp.2d 691 (S.D. Tex. 2013)....................................20, 21, 22

*Coach, Inc. v. J-Design Accessory, LLC*,
    No. 5:12-CV-98, 2013 WL 12140973 (S.D. Tex. Sept. 27, 2013)....................20

*Dial One of the Mid-South, Inc. v. BellSouth Telecomms., Inc.*,
    269 F.3d 523 (5th Cir. 2001) ...........................................................18

*Dunkin' Donuts Inc. v. Mercantile Ventures*,
    19 F.3d 14 (5th Cir. 1994) ................................................................4

*eBay, Inc. v. MercExchange, LLC*,
    547 U.S. 388 (2006).......................................................................15

*Exxon Mobil Corp. v. Exxonmobil for Export Import and Trade Ltd.*,
    No. 3:12-cv-1122, 2013 WL 12124589 (N.D. Tex. Aug. 23, 2013)......19, 21, 22

*Ford Glob. Techs., LLC v. New World Int'l, Inc.*,
    No. 3:17-CV-3201-N, 2019 WL 1531759 (N.D. Tex. Apr. 9, 2019)................13

*Gaddis v. United States*,
    381 F.3d 444 (5th Cir. 2004) ...........................................................20

*Global Healing Ctr., LP v. Nutritional Brands Inc.*,
    No. 4:14-CV-269, 2014 WL 897817 (S.D. Tex. Mar. 6, 2014) ........................17

*Lowe v. Eltan, B.V.*,
    No. 9:05-CV-38, 2018 WL 7822940 (E.D. Tex. Dec. 12, 2018) ...............*passim*

*Merck Eprova AG v. Gnosis S.P.A.*,
    760 F.3d 247 (2d Cir. 2014) .............................................................9

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
    572 U.S. 545 (2014).......................................................................10

*Quantam Fitness Corp. v. Quantum Lifestyle Ctrs., LLC*,
    83 F. Supp. 2d 810 (S.D. Tex. 1999)....................................................................17

*Retractable Techs. Inc. v. Becton Dickinson & Co.*,
    919 F.3d 869 (5th Cir. 2019) .............................................................................1

*Roor Int'l BV v. AKS1 Enters., Inc.*,
    No. H-19-3835, 2019 WL 3500911 (S.D. Tex. Aug. 1, 2019)..........................18

*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*,
    932 F.2d 1113 (5th Cir. 1991) .......................................................................4, 5

*Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*,
    951 F.2d 684 (5th Cir. 1992) ...................................................................4, 9, 11

*Tinnus Enters. v. Telebrands Corp.*,
    369 F. Supp. 3d 704 (E.D. Tex. 2019)..........................................................12, 13

*VirnetX Inc. v. Apple Inc.*,
    324 F. Supp. 3d 836 (E.D. Tex. 2017)...............................................................12

*Wright v. E-Sys., LLC*,
    No. 3:12-CV-4715-K-BK, 2016 WL 7802996 (N.D. Tex. Dec. 20,
    2016) ...................................................................................................................12

*Yeti Coolers, LLC v. Kuer Outdoors, LLC*,
    No. A-16-CV-631-RP, 2017 WL 8896871 (W.D. Tex. May 11,
    2017) .....................................................................................................................5

## Statutes

15 U.S.C. § 1116(a) ....................................................................................................15

15 U.S.C. § 1117(a) ...........................................................................................*passim*

15 U.S.C. § 1117(c) ....................................................................................................18

28 U.S.C. § 1961(a) ...............................................................................................22, 23

## Other Authorities

Federal Rule of Civil Procedure 54 ...........................................................................10

McCarthy on Trademarks and Unfair Competition         *passim*

iv

In accordance with the Court's February 26, 2020 Order (Dkt. 263), Chevron Intellectual Property LLC and Chevron U.S.A. Inc. (for simplicity in this filing only, "Chevron") ask the Court to take judicial notice of the information on the Court's docket and the trial record and (1) disregard the jury's advisory award and disgorge $3.2 million in profits; (2) enhance that award; (3) find the case exceptional; (4) make permanent the current preliminary injunctive relief; (5) award statutory damages and attorneys' fees and costs for willful counterfeiting against the Defaulting Defendants; and (6) award pre- and post-judgment interest.  In support of such relief, Chevron simultaneously submits its Proposed Findings of Fact and Conclusions of Law and Appendix attaching the trial exhibits and trial transcript excerpts referred to herein.

## ARGUMENT

### I.    The Court Should Disregard the Jury's Verdict and Disgorge $3.2 Million in Profits.

The evidence at trial supports disgorging $3.2 million in profits, and it is entirely in this Court's province to do so.  *See, e.g.*, *Retractable Techs. Inc. v. Becton Dickinson & Co.*, 919 F.3d 869, 883 (5th Cir. 2019) (noting that the district court had discretion to consider various facts in assessing whether disgorgement of profits would be equitable); *Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.*, No. 4:17-CV-01400, 2019 WL 5684201, at *2 (S.D. Tex. Nov. 1, 2019) ("This Court finds that disgorgement is a question for this Court and therefore treats the jury's answers as

advisory."); 6 McCarthy on Trademarks and Unfair Competition § 32:124 (4th ed. 2001) ("where the trademark owner's claim is for injunctive relief and an accounting of profits, these are historically claims in equity to be decided by the judge, not a jury").  It follows that the jury's answer on disgorgement of profits in this case is purely advisory and subject to adjustment by this Court based on its assessment of the trial record.

The trial record supports an award of $3.2 million.  Chevron met its burden to prove approximately $3.3 million in gross revenues that Defendants received from the unauthorized use of Chevron's trademarks.  This evidence was undisputed. Defendants failed to meet their burden to show credible evidence of expenses that would reduce revenues by any amount, including a reduction to $1.1 million as awarded by the jury.  *See* 15 U.S.C. § 1117(a) (outlining burden shifting).  Indeed, at trial, only Chevron presented credible evidence of any costs or deductions.[1]

---

[1] The $1.7 million referenced in Plaintiffs' Exhibit 305, which Defendants touted as alleged evidence of expenses incurred in the Avalant transaction, is not credible evidence and should be given no weight for purposes of calculating Defendants' profits on the Avalant transaction. Chevron's expert witness, Ambreen Salters, testified that for numerous, well-founded reasons, she did not rely on Plaintiffs' Exhibit 305—including the $1.7 million figure—in forming her opinions.  Feb. 21, 2020 Trial Tr. 807:16-809:9.  Yet even if accepted, the $1.7 million deduction would not align with a $1.1 million award.

The following revenue amounts were introduced without any serious dispute, and the evidence overwhelmingly connects all of these amounts to use of Chevron's trademarks:

| Source of Revenues/Investments[2] | Total |
|---|---|
| Deposits from Avalant[3] | $1,290,940 |
| Refunds to Avalant[4] | ($41,063) |
| Sariel Payments to Lansing for Avalant[5] | ($303,261) |
| Lansing Refund to Doolittle[6] | $100,000 |
| Deposits from DRT/Kitchen[7] | $1,209,600 |
| Deposit from Harvest Fuels[8] | $274,970 |
| Money received from Gepar[9] | $494,000 |
| Investment—Guillermo Capacho[10] | $200,000 |
| Investment—Hector Figuroa[11] | $12,373 |
| Investment – Typhanie Nguyen[12] | $81,000 |

---

[2] Feb. 18, 2020 Trial Tr. 105:16-18.

[3] Feb. 21, 2020 Trial Tr. 755:17-756:11 (referring to Pl. Exs. 101, 102).

[4] Feb. 21, 2020 Trial Tr. 757:4-24 (referring to Pl. Ex 106).

[5] Feb. 21, 2020 Trial Tr. 824:25-830:14 (referring to Pl. Exs. 126, 127).

[6] Feb. 19, 2020 Trial Tr. 205:24-206:4.

[7] Feb. 21, 2020 Trial Tr. 758:18-760:3.

[8] Feb. 21, 2020 Trial Tr. 760:5-762:10 (referring to Pl. Ex. 55).

[9] Feb. 20, 2020 Trial Tr. 369:1-372:8, 370-22-24, 371:20-372:2 (referring to Pl. Ex. 33).

[10] Feb. 18, 2020 Trial Tr. 108:3-15 (referring to Pl. Ex. 212).

[11] Feb. 18, 2020 Trial Tr. 109:23-111:14 (referring to Pl. Ex. 212).

[12] Feb. 18, 2020 Trial Tr. 112:17-113:15 (referring to Pl. Ex. 212).

| | |
|---|---|
| Investment – Kelly Hanson[13] | $67,493 |
| | **Total:  Approx. $3.2 million** |

Without credible evidence to establish offsets beyond those reflected in the above chart—and there are none—the Court should disgorge profits in line with the evidence and burden-shifting standard in Section 1117(a).

## II.  The Disgorged Profits Should Be Enhanced Under the Lanham Act.

Because Defendants willfully infringed Chevron's trademarks (Dkt. 270 at 12) and litigated in bad faith, the record supports enhancing damages, which is an issue for the Court to decide.  *See, e.g.*, *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1127 (5th Cir. 1991).

In particular, because "the amount of the recovery based on profits is [] inadequate," the Court should exercise its discretion to "enter judgment for such sum as the court shall find to be just, according to the circumstances of the case."  *See* 15 U.S.C. § 1117(a); *see also Dunkin' Donuts Inc. v. Mercantile Ventures*, 19 F.3d 14 (5th Cir. 1994) ("[I]t was within the district court's discretion to reject the special master's profit calculations, substitute its own, and '. . . enter judgment for such a sum as the court shall find to be just . . . .'"); *Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 694 (5th Cir. 1992) ("Under 15 U.S.C. § 1117(a) [], the trial court has wide discretion to increase or reduce the amount of profits

---

[13] Feb. 18, 2020 Trial Tr. 112:5-8 (referring to Pl. Ex. 212).

recoverable by the plaintiff '[i]f the court shall find that the amount of the recovery based on profits is either inadequate or excessive . . . according to the circumstances of the case.'").  Section 1117(a) places no limit on the enhancement of profits.  *See generally* Section 1117(a).

Here, profits should be trebled.  Courts in in this Circuit have doubled or trebled damages in similar circumstances.  *Taco Cabana*, 932 F.2d at 1127 (affirming doubling of the jury award for willful and deliberate conduct where imprecision resulted from defendant's conduct); *Yeti Coolers, LLC v. Kuer Outdoors, LLC*, No. A-16-CV-631-RP, 2017 WL 8896871, at *3 (W.D. Tex. May 11, 2017), report and recommendation adopted, No. 1:16-CV-631-RP, 2017 WL 8939955 (W.D. Tex. July 10, 2017) (trebling profits after finding "infringements, dilutions, and acts of unfair competition have been intentional and willful" and a "refusal to meaningfully engage in [the] litigation[, which] undermine[d] YETI's ability to enforce its intellectual property rights"); *Bos. Pizza Rests., L.P. v. Bay Three Ltd., Inc.*, No. 3:12-CV-00426-O, 2013 WL 12123896, at *7 (N.D. Tex. July 16, 2013) (trebling disgorged profits upon evidence of a knowing violation of a temporary restraining order leading to customer confusion regarding sponsorship of the restaurant); *Choice Hotels Int'l, Inc. v. Cheema Invs., LLC*, No. 3:11-CV-01762-O, 2013 WL 12125998, at *6 (N.D. Tex. Feb. 20, 2013) (trebling disgorged profits upon evidence of a willful "failure to participate in this litigation" that prevented the

plaintiff "from ascertaining both the profits owed by Cheema and the full extent of actual damage caused by the infringement"). Treble damages are appropriate in this case because Defendants (1) acted knowingly, deliberately, willfully and fraudulently in their infringing conduct (Dkt. 270 at 12); and (2) engaged in a long-term calculated scheme to hide and destroy relevant evidence, which required six discovery-related hearings and eight discovery-related orders.

In addition to the transactions that are known to have closed and generated profits for Defendants, Ms. Salters testified that she identified numerous commercial invoices, offers, fuel quotes, and other negotiation-type documents that Defendants issued to third parties related to the potential sale of products valued at close to $1 billion. Feb. 21, 2020 Trial Tr. 764:1-780:14. Some of these transactions may well have closed, generating additional profits for Defendants, but, as outlined below, Defendants' actions before and during the litigation make it impossible to know that. Indeed, the evidence is undisputed that at least the Gepar Energy transaction generated revenue, even though there are no bank records to support that transaction and the only invoice produced was evidently a draft. *See* Feb. 20, 2020 Trial Tr. 369:1-370:21 (referring to Pl. Ex. 33).

Defendants engaged in sanctionable discovery conduct throughout this case, including refusing to produce relevant bank records and correspondence, failing to image and search applicable electronic devices, and refusing to preserve

electronically stored information.  In fact, Chevron was forced to discover banking information presented to the jury—which is incomplete—primarily through third-party subpoenas to the banks themselves.  As outlined at trial, Defendants and the available documents referenced numerous bank accounts, yet bank records for most of those accounts were never produced.  The account records that Chevron obtained show that Defendants moved money around in a classic shell game.  Defendant Doolittle could not identify all of his bank accounts or why money moved back and forth between various accounts, and he admitted that money was transferred and withdrawn for personal use, although he could not say how much.  Feb. 18, 2020 Trial Tr. 114:24-115:1, 150:24-151:4; Feb. 19, 2020 Trial Tr. 209: 17-217:4, 220:13-25, 222:5-14, 232:10-234:1; Feb. 21, 2020 Trial Tr. 620:18-20, 621:7-10.

Defendants' inability to present credible evidence to offset profits is not surprising, given that Defendant Doolittle testified that he did not maintain any financial books or records for Defendant Sariel Petroleum and that he relied on his business partner, Tracy Martinez, to do so.  Feb. 19, 2020 Trial Tr. 205:24-206:10.  Yet Tracy Martinez testified at trial that he did not create or maintain books and records.  Feb. 21, 2020 Trial Tr. 620:12-17.  From this record, it is impossible to ascertain with any certainty how much money Defendants took in and for what purpose, especially after Defendants refused to produce relevant bank records.  Defendants' bad-faith conduct deprived Chevron of any certainty that it discovered

the full extent of Defendants' fraudulent scheme and all of the money made using Chevron's trademarks.

Defendants' recurring false representations, including to Magistrate Judge Bray, that all relevant documents and information had been provided also underscore the uncertainty of Defendants' profits and justify enhancement.  In fact, Defendants made a calculated decision at the outset of this case to resist even legitimate discovery efforts concerning their admitted infringing conduct.  *See* Pl. Ex. 68 (defense counsel discussing in January 2018 "fighting to preclude your sworn depositions testimony"); *see also* Dkt. 171.  As a result, Chevron had to rely on third-party subpoenas for critical discovery, and other highly relevant information was allegedly lost entirely.  *See* Feb. 21, 2020 Trial Tr. 621:11-622: 1, 628:5-15 (emails and electronic data associated with the sarielpetro.com domain name lost when the account was breached and shut down); Feb. 20, 2020 Trial Tr. 406:20-409:7 (Defendant Sariel Petroleum's one computer was allegedly stolen in September 2018).  Defendants' unreasonable and abusive discovery tactics not only hid the full extent of their scheme, but also provide a separate and independent basis for enhancing disgorged profits.  The record of deficient discovery responses and a near refusal to sit for depositions, all necessitating six discovery-related hearings and eight discovery-related orders, alone compels enhancement.

Here, the enhancement is not a punishment but, rather, recognition of the "intangible benefits that accrued" to Defendants as a result of their unlawful conduct. *See Merck Eprova AG v. Gnosis S.P.A.*, 760 F.3d 247, 262-63 (2d Cir. 2014). And the extent of those benefits is not known or likely knowable due to Defendants' willful conduct and obstructive litigation tactics. This Court should exercise its discretion to "enter judgment for such as sum as the court shall find to be just." *See Texas Pig Stands*, 951 F.2d at 694. The full amount of Defendants' infringing profits is unknown, and Defendants caused that imprecision. Given the sheer size and scope of Defendants' activities, trebling is appropriate. As outlined in closing argument, doing so is consistent with assuming that only one percent of those deals closed and that Defendants made what broker Arnold Salinas testified is an industry-standard 20 percent margin. Feb. 21, 2020 Trial Tr. 691:10-25, 694:11-16 (Salinas testimony that margin would typically have been 20 percent for Sariel Petroleum); Feb. 26, 2020 Trial Tr. 1009:23-1012:3 (calculation of treble enhancement in closing argument).

## III.   This Is an Exceptional Case Within the Meaning of the Lanham Act.

There are few if any cases with such blatant infringement and litigation misconduct as in this exceptional case. The Lanham Act provides that "in exceptional cases, [the court] may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "[A] fee award may be warranted either where the

prevailing party stood out in terms of the strength of its litigating position or where the non-prevailing party litigated the case in an 'unreasonable manner.'" *Alliance for Good Gov't v. Coal. for Better Gov't*, 919 F.3d 291, 295 (5th Cir. 2019) (citing *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 n.6 (2014), and *Baker v. DeShong*, 821 F.3d 620, 623 (5th Cir. 2016)).  This case is exceptional on multiple, independent grounds.  Once the Court finds this case exceptional, Chevron will submit a motion for attorneys' fees and costs in accordance with Federal Rule of Civil Procedure 54.

### A.   This case is exceptional based on Defendants' willful conduct.

"This is not a case of mere negligence – there was clear intent and willfulness in engaging in the wrongful conduct made the bases of the Lanham Act violations." *Lowe v. Eltan, B.V.*, No. 9:05-CV-38, 2018 WL 7822940, at *10 (E.D. Tex. Dec. 12, 2018) (holding case "exceptional" for purposes of Section 1117(a) when defendants demonstrated a "pattern of willfulness and bad faith" and "[c]lear and convincing evidence shows that the defendants collectively engaged in a pattern of deception and fraud to essentially steal and palm off the Plaintiffs' trademarked technology for their own benefit").[14]   The jury found by clear and convincing evidence that

---

[14] *See also, e.g.*, *Adobe Sys. Inc. v. SKH Sys., Inc.*, No. A-17-CA-018-SS, 2017 WL 6611513, at *9 (W.D. Tex. Dec. 27, 2017) (finding exceptionality when defendant "deliberately used Plaintiffs' exact marks in advertising the sale of computers to solicit sales"); *ClearChoice Holdings, LLC v. Clear Choice Dental, PLLC*, No. H–14–035692016, 2016 WL 8136622, at *8 (S.D. Tex. Dec. 23, 2016) (finding that

"Defendants act[ed] maliciously, fraudulently, deliberately, or willfully in infringing Chevron's trademarks."  Dkt. 270 at 12.  The jury's finding and the trial record establish that this is an exceptional case.

**B.    Defendants litigated the case in a bad-faith, unreasonable manner.**

The record overwhelmingly establishes that Defendants litigated this case from beginning to end in an unreasonable manner, which itself supports finding the case exceptional.  They did so in two ways: (1) unreasonable discovery tactics, and (2) unreasonable litigation positions.  Either supports finding the case exceptional, and both are true here.

**1.    Unreasonable discovery tactics**

First, from the outset, Defendants concealed relevant evidence, obstructed discovery of electronically stored information, used the attorney-client privilege to shield their fraud, and refused to appear for depositions until ordered to do so in avoidance of contempt charges.  A reasonable inference could be drawn that they actually spoliated evidence.  Defendants' bad-faith litigation tactics necessitated six discovery-related hearings, eight discovery-related court orders, and three extensions of the trial term from March/April 2019 to November 2019.  Apart from third-party subpoenas, these hearings and orders were the only means Chevron had

---

defendants' "high degree of culpability" including "bad faith or fraud" justified an award of attorneys' fees) (quoting *Tex. Pig Stands*, 951 F.2d at 694).

to discover the extent of Defendants' wrongdoing.  Even now, despite the Court's discovery intervention, Defendants' blatant disregard for the discovery process left Chevron with no confidence that it uncovered all transactions in which Defendants used Chevron's brand and reputation.

Unreasonable discovery tactics will support an exceptionality finding for purposes of Section 1117(a).  *See, e.g.*, *Alliance for Good Gov't*, 919 F.3d at 296 (finding case exceptional when defendants engaged in unreasonable discovery tactics); *Tinnus Enters. v. Telebrands Corp.*, 369 F. Supp. 3d 704, 745 (E.D. Tex. 2019) (holding case exceptional where "Defendants took untenable positions and created unnecessary hurdles for the parties and the Court" including "engag[ing] in sanctionable discovery misconduct"); *Wright v. E-Sys., LLC*, No. 3:12-CV-4715-K-BK, 2016 WL 7802996, at *7 (N.D. Tex. Dec. 20, 2016), report and recommendation adopted, No. 3:12-CV-4715-K-BK, 2017 WL 169116 (N.D. Tex. Jan. 17, 2017) (finding case exceptional, in part because of defendants' failure to respond to all types of discovery and court orders); *see also VirnetX Inc. v. Apple Inc.*, 324 F. Supp. 3d 836, 872 (E.D. Tex. 2017), *aff'd sub nom*. *VirnetX Inc. v. Cisco Sys., Inc.*, 748 F. App'x 332 (Fed. Cir. 2019) (holding that "Apple's haste in seeking advisory opinions, combined with its delay in providing VirnetX with the relevant facts, demonstrate[d] a level of gamesmanship [that] weighs in favor of a finding of an exceptional case").  Defendants' discovery conduct supports exceptionality.

### 2. Unreasonable litigation positions

Second, exceptionality is evident in the numerous unreasonable positions that Defendants staked out in defense of their infringing conduct. *See, e.g.*, *Tinnus Enters.*, 369 F. Supp. 3d at 745 (find case exceptional, in part, where "Defendants took untenable positions"); *Ford Glob. Techs., LLC v. New World Int'l, Inc.*, No. 3:17-CV-3201-N, 2019 WL 1531759, at *2 (N.D. Tex. Apr. 9, 2019) (holding case exceptional when defendant "filed multiple excessive motions, including motions to dismiss, for clarification, and for reconsideration that unnecessarily prolonged litigation").

For example, in trial testimony, Defendant Diaz denied that the bank account he opened in Chevron's name at Wells Fargo without Chevron's authorization was illegitimate. Instead, he urged this Court and the jury to accept that the account must be "legitimate" if the Harris County Clerk permitted him to obtain a d/b/a for Chevron and Wells Fargo permitted him to open the account. Feb. 20, 2020 Trial Tr. 542:13-543:7. Defendant Diaz later doubled down on this absurd position in characterizing his conduct *as deceiving but not fraudulent*. Feb. 21, 2020 Trial Tr. 601:4-606:13.

Defendants' further insistence that the domain name "chevronus.com" and the email address alvind@chevronus.com relates to a nonsensical "chevronus" (sha-vrown-us) entity is yet another example of Defendants' bad-faith litigation positions.

Feb. 18, 2020 Trial Tr. 94:12-21.   The context of the domain and email usage, including testimony concerning how they were chosen by Defendants, proves otherwise.   Feb. 20, 2020 Trial Tr. 473:12-22.   This frivolous argument is akin to Defendants' summary judgment briefing, wherein they claimed that Chevron's trademarks may not be famous because chevrons have been used historically in other contexts, like on pottery or to signify a military rank.   Dkt. 193 at 3.   Chevron's litigation position was particularly strong and Defendants' positions particularly frivolous.

### IV.   Chevron Is Entitled to Permanent Injunctive Relief Enjoining the Trial Defendants' Unlawful Conduct.

Chevron requests that the scope of the permanent injunction mirror that of the preliminary injunction (*see* Dkt. 41), except for paragraph (iv), which in part concerns the now-closed Chevron USA Products account at Wells Fargo and paragraph (vii), which concerns maintaining evidence.

Both the Ninth and Sixth Circuits have stated that "*injunctive relief is the remedy of choice* for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by an infringer's continuing infringement." *Audi AG v. D'Amato*, 469 F.3d 534, 550–51 (6th Cir. 2006) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)) (emphasis added).   Such is the case here.   Chevron has no adequate remedy at law for the injury caused by the Defendants' infringement.

Furthermore, equity demands an injunction.  The Lanham Act provides that the Court "shall have the power to grant injunctions" against infringement "according to the principles of equity[.]"  15 U.S.C. § 1116(a).  A decision to grant or deny permanent injunctive relief rests within the discretion of a district court and should be decided in accordance with traditional principles of equity.  *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Such factors include that: (1) the plaintiff has suffered an irreparable injury, (2) legal remedies are inadequate, (3) an equitable remedy is warranted given the balance of hardships between the parties, and (4) a permanent injunction would not disserve the public interest.  *Id.*  Each element is met in this case.

### A.    Irreparable harm to Chevron is presumed or easily proven.

"'All that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion—injury is presumed.'"  *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) (quoting 5 MCCARTHY § 30:2 (4th ed. 2001)).  The likelihood of confusion was so straightforward here that the Court previously decided it as a matter of law.  *See* Dkt. 209 at 8.

Even absent a presumption of irreparable harm, Defendants' fraudulent conduct and unauthorized use of Chevron's trademarks jeopardized Chevron's careful protection and promotion of its "most valuable asset."  Feb. 20, 2020 Trial Tr. 445:9-14, 449:6-7, 461:3-5.  As a result, Chevron is irreparably harmed because

it cannot control the quality of Defendants' goods or services.  *See, e.g.*, *Anderson v. Baker*, No. 4:14-CV-1211, 2014 WL 2434195, at *9 (S.D. Tex. May 28, 2014) ("[W]hen a likelihood of confusion exists, the plaintiff's lack of control over the quality of defendant's goods or services constitutes an immediate and irreparable injury. . .").

### B.   Money damages are inadequate to address the continued infringement and reputational harm.

Money alone cannot adequately compensate Chevron.  "'[T]here seems little doubt that money damages are 'inadequate' to compensate [an owner] for continuing acts of [an infringer].'"  *Abraham*, 708 F.3d at 627 (quoting MCCARTHY § 30:2). Indeed, Defendant Doolittle agreed that "even today, . . . [he's] always trying to drum up business for [him]self" (Feb. 19, 2020 Trial Tr. 269:5-8), and Chevron cannot run the risk that Defendants will trade on its name and reputation again.

### C.   The balance of harms unquestionably favors Chevron.

Chevron has spent more than half a century and significant resources protecting its trademarks and building goodwill under the Chevron brand.  Feb. 20, 2020 Trial Tr. 441:11-15.  In contrast, Defendants have no legitimate rights in, and fraudulently traded on, Chevron's good name and reputation to obtain financial gain from the unsuspecting public.  "The balance-of-hardships weigh in favor of awarding protection to those [like Chevron] who over a substantial number of years [have] built [their word and marks] into a valuable and essential asset of [their]

business." *Global Healing Ctr., LP v. Nutritional Brands Inc.*, No. 4:14-CV-269, 2014 WL 897817, at *9 (S.D. Tex. Mar. 6, 2014) (citations and internal quotation marks omitted).  Any harm to Defendants from the permanent injunction is of their own doing and is a result of their decision to embark on a years-long, multi-faceted fraudulent scheme, rather than developing any business through legitimate means. The harm to Chevron is real if Defendants' conduct is not enjoined permanently.

> ### D.   A permanent injunction is in the public interest.

"The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Quantam Fitness Corp. v. Quantum Lifestyle Ctrs*., LLC, 83 F. Supp. 2d 810, 832 (S.D. Tex. 1999).  That is especially true here, where an injunction will protect members of the public from confusion about whether they are truly doing business with Chevron, or with fraudsters.

> ## V.   The Court Should Award Statutory Damages and Attorneys' Fees and Costs for Willful Counterfeiting Against the Defaulting Defendants.

This Court previously entered final judgments on liability for willful counterfeiting against Defaulting Defendants Sariel Enterprises, LLC, Michael Szucs, and Ken Watson. Dkt. 215 at 4; Dkt. 233 at 3-4.  In cases involving the use of a counterfeit mark, the Lanham Act permits Chevron to "elect, at any time before final judgment is rendered by the trial court, to recover . . . an award of statutory

damages for any such use in connection with the sale, offering for sale, or distribution of goods or services." 15 U.S.C. § 1117(c). "[I]f the court finds that the use of the counterfeit mark was willful," Chevron may recover not less than $1,000 and "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." *Id*. § 1117(c)(1), (2).

Courts have broad discretion to set the amount of statutory damages under the Lanham Act. *Dial One of the Mid-South, Inc. v. BellSouth Telecomms., Inc*., 269 F.3d 523, 527 (5th Cir. 2001). In this case, the Court should award the upper range of statutory damages available based on the Defaulting Defendants' willful disregard for Chevron's famous marks and the gravity of this proceeding.

To determine the appropriate amount of statutory damages, courts have considered factors such as "'the willfulness of the defendant's conduct, the deterrent effect of an award on both the defendant and others, the value of the [trademark], whether the defendant has cooperated in providing necessary records to assess the value of the infringing material, and the losses sustained by the plaintiff.'" *See, e.g.*, *Roor Int'l BV v. AKS1 Enters., Inc*., No. H-19-3835, 2019 WL 3500911, at *3 (S.D. Tex. Aug. 1, 2019) (citations omitted). In addition to the willfulness determination by this Court (Dkt. 215 at 4; Dkt. 233 at 3-4), failure to defend against claims in itself has been found to demonstrate willfulness. *See, e.g.*, *id*. (citing *In Re Chinese-*

*Manufactured Drywall Prod. Liab. Litig.*, No. 09-2047, 2018 WL 279629, at *8 (E.D. La. Jan. 2, 2018)).   In terms of the value of the trademarks, this Court previously determined as a matter of law that the undisputed material facts show that the trademarks are famous and distinctive.  Dkt. 209 at 10-11.  Further, a significant amount of damages will have the appropriate punitive effect on Defaulting Defendants as well as deter future defendants, and, as noted herein, Defaulting Defendants have produced no records with which to assess the value of the infringing material.  Accordingly, the relevant factors weigh in favor of a significant award of statutory damages.

Chevron seeks statutory damages awards of no less than $1,000 and no more than $2 million against each of the Defaulting Defendants for their willful use of the counterfeit Chevron word mark (Reg. No. 416,133) in commercial invoices and related documents provided to third parties.  *See, e.g.*, Pl. Exs. 15,[15] 16, 41, and 290 (Watson); Pl. Exs. 15, 16, 290 (Szucs); Pl. Exs. 15, 16,[16] 26, 27, and 33 (Sariel Enterprises, LLC).  Each of the relevant factors support a significant award to

---

[15] Plaintiffs' Exhibit 15 is a commercial invoice concerning UK-Metalex Ltd., as to whom Defaulting Defendants Ken Watson and Michael Szucs are listed as "Sellers Rep." for Chevron Corporation for the same product and volume offered to UK-Metalex Ltd. in Pl. Ex. 16, the "Chevron Request for Product."

[16] While Plaintiffs' Exhibits 15 and 16 refer to Defendant Sariel Petroleum, LLC, it is undisputed that Defaulting Defendant Sariel Enterprises, LLC carried on the business of Defendant Sariel Petroleum, LLC as of December 1, 2017.  *See* Pl. Exs. 170, 171; Feb. 19, 2020 Trial Tr. 267:3-269:3.

Chevron. *See, e.g.*, *Exxon Mobil Corp. v. Exxonmobil for Export Import and Trade Ltd.*, No. 3:12-cv-1122, 2013 WL 12124589, at \*4 (N.D. Tex. Aug. 23, 2013) (awarding $2 million in statutory damages plus attorneys' fees against a defaulting counterfeiter).

Furthermore, the Lanham Act's provision for attorneys' fees and costs in "exceptional cases" under Section 1117(a) is easily met here with the willfulness findings previously entered by this Court as to each Defaulting Defendant.  Dkt. 215 at 4; Dkt. 233 at 3-4.  *See Coach, Inc. v. J-Design Accessory, LLC*, No. 5:12-CV-98, 2013 WL 12140973 at \*4 (S.D. Tex. Sept. 27, 2013) (finding that the case presented the exceptional circumstance in which an award of costs and attorney's fees is warranted and noting that an award of "costs of the action" under Section 1117(a) should include those costs recoverable under 28 U.S.C. § 1920) (citing *Gaddis v. United States*, 381 F.3d 444, 476 (5th Cir. 2004))).

## VI.   Chevron Is Entitled to Pre-Judgment Interest.

Federal courts routinely award pre-judgment interest in trademark cases. *Lowe*, 2018 WL 7822940, at \*11 (citing *Clearline Techs. Ltd. v. Cooper B–Line, Inc.*, 948 F.Supp.2d 691, 712 (S.D. Tex. 2013) (citing 1 MCCARTHY § 30:93)).

Although the Fifth Circuit has not addressed what circumstances warrant an award of pre-judgment interest for violations of the Lanham Act, several district courts in the Fifth Circuit have followed the approach of other federal appeals courts

in concluding that prejudgment interest should be presumptively available to victims of federal-law violations to afford complete compensation to the plaintiff and to disincentivize delay in satisfaction of judgments. *See, e.g.*, *ClearChoice Holdings*, 2016 WL 8136622, at \*9 ("The court believes following the approach of the Seventh and Tenth Circuits to be persuasive and appropriate in this case."); *Clearline Techs.*, 948 F. Supp. 2d at 713 ("The Court is persuaded by the Seventh Circuit's reasoning that pre-judgment interest should be awarded in most cases."); *Exxon Mobil Corp.*, 2013 WL 12124589 at \*5 ("The Court finds the Seventh and Tenth Circuits' reasoning persuasive. Prejudgment interest should be presumptively available to victims of federal violations.").   This Court likewise should award pre-judgment interest.

Even setting aside this recognized presumption that pre-judgment interest should follow from violations of federal law, an award of pre-judgment interest would necessarily follow under the more strenuous standard adopted by the Second Circuit, because this is an exceptional case. *See Am. Honda Motor Co., Inc. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir. 1990) (awarding pre-judgment interest in "exceptional" cases only).

An award of pre-judgment interest is therefore appropriate at the prime rate or Treasury bill rate on the award of profits disgorgement under the Lanham Act. *See Lowe*, 2018 WL 7822940, at \*12 (awarding pre-judgment interest on Lanham

Act damages in the amount of the average monthly prime rate from the date the Plaintiffs' infringement claims accrued); *Exxon Mobil Corp.*, 2013 WL 12124589 at *5 (same); *Clearline Techs.*, 948 F. Supp. 2d at 713–14 (same).   Pre-judgment interest should run from the date Chevron's infringement claims accrued, in April 2016,[17] until the date that this Court enters judgment.  *See Lowe*, 2018 WL 7822940, at *12; *Clearline Techs.*, 948 F. Supp. 2d at 714.

## VII.   Chevron Is Entitled to Post-Judgment Interest.

Chevron is further entitled to post-judgment interest under 28 U.S.C. § 1961(a), which states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  The statute provides that post-judgment interest should be assessed on the full amount of the money judgment "at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for

---

[17] While Defendant Doolittle testified that his first representations in the marketplace that Defendant Sariel Petroleum could sell Chevron product dated to 2015 (Feb. 20, 2020 Trial Tr. 340:23-25), Chevron cannot pinpoint that date with any degree of certainty.   April 6, 2016, however, is the date of the first known letter on fake Chevron letterhead that Defendant Doolittle disseminated to third parties, in this case, Darryl Hardy at Monarch Environmental Services.  *See* Pl. Ex. 221.  The letter purportedly issued from a non-existent Chevron trader named Daniel Morales.  *See* Feb. 19, 2020 Trial Tr. 192:8-200:4 (Defendant Doolittle admitting that he created the letter without Chevron's authorization using a logo and address that he obtained from the internet); Feb. 20, 2020 Trial Tr. 533:10-535:3 (Defendant Diaz testifying that the letter created and sent to him by Defendant Doolittle is not legitimate).

the calendar week preceding[] the date of the judgment." *Id*. Accordingly, the applicable post-judgment interest rate should be assessed at the time this Court enters final judgment. *See Lowe*, 2018 WL 7822940, at *12 (awarding post-judgment interest under 28 U.S.C. § 1961(a) on a judgment for Lanham Act damages).

## CONCLUSION AND PRAYER FOR RELIEF

For all the foregoing reasons, Chevron respectfully requests that the Court take judicial notice of the information on the Court's docket and the trial record to (1) disregard the jury's advisory award and disgorge $3.2 million in profits; (2) enhance that award; (3) find the case exceptional; (4) make permanent the current preliminary injunctive relief; (5) take judicial notice of the record at trial and award statutory damages and attorneys' fees and costs for willful counterfeiting against the Defaulting Defendants; and (6) award pre- and post-judgment interest.

Chevron further requests all such other and further relief that the Court may deem just under the circumstances.

Respectfully submitted this 18th day of March 2020.

By: */s/ Craig Stanfield*
Craig Stanfield
Attorney-in-Charge
Texas Bar No. 24051371
S.D. Tex. Fed. ID. No. 789722
Christie Cardon
Texas Bar No. 24036326
S.D. Tex. Fed. ID No. 567834
Abby L. Parsons
Texas Bar No. 24094303
S.D. Tex. Fed. ID No. 2618689
KING & SPALDING LLP
1100 Louisiana St., Ste. 4000
Houston, Texas 77002
Tel: 713-751-3200
Fax: 713-751-3900
cstanfield@kslaw.com
ccardon@kslaw.com
aparsons@kslaw.com

*Of Counsel:*

Kathleen E. McCarthy
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel: (212) 556-2345
Fax: (212) 556-2222
kmccarthy@kslaw.com

*Attorneys for Plaintiffs Chevron*
*Intellectual Property LLC and Chevron*
*U.S.A. Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 18, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which automatically sends e-mail notification of such filing to all counsel of record.

*/s/ Craig Stanfield*
*Attorney for Plaintiffs*
*Chevron Intellectual Property LLC*
*Chevron U.S.A. Inc.*
