## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

Chevron Intellectual Property LLC and
Chevron U.S.A.

      Plaintiffs,

             v.

Sariel Petroleum, LLC, Sariel
Enterprises, LLC, Arael Doolittle,
Alvin Diaz, Ken Watson, and Michael
Szucs,

      Defendants.

                              Case No. 4:18-cv-158

## <u>PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS</u>

# TABLE OF CONTENTS

**BACKGROUND** ...................................................................................................1

**ARGUMENT** ......................................................................................................2

**I. ATTORNEYS' FEES** ....................................................................................2

    **A. The Court determined that this is an "exceptional" case for which Chevron is entitled to attorneys' fees and costs as a prevailing party under the Lanham Act.** .................................................2

    **B. Chevron's lodestar amount is based on the hours reasonably expended at a reasonable hourly rate over a period of two and one-half years litigating a complex and protracted action.** ..................2

        **1. Hours reasonably expended.** ..................................................5

        **2. Reasonable hourly rate.** .........................................................9

    **C. *Johnson* factors 2-3, 8-9 demonstrate the reasonableness of the lodestar amount.** ........................................................................10

        **1. Chevron secured broad permanent injunctive relief and a multi-million-dollar damages award in compensation for Defendants' infringement of Chevron's extremely valuable trademarks. (*Johnson* factor No. 8)** .................................11

        **2. Chevron's experienced and reputable legal team possessed the requisite skill to properly perform the required legal services. (*Johnson* factor Nos. 3 and 9)** ..........................12

        **3. This case entailed complex legal issues. (*Johnson* factor No. 2)** .....................................................................................13

    **II. COSTS** ..................................................................................................14

    **CONCLUSION** ..........................................................................................20

# Table of Authorities

**Page(s)**

**Cases**

*Baisden v. I'm Ready Prods., Inc.*,
    793 F. Supp. 2d 970 (S.D. Tex. 2011)................................................................18

*Black v. SettlePou, P.C.*,
    732 F.3d 492 (5th Cir. 2013) ..............................................................................11

*ClearChoice Holdings, LLC v. Clear Choice Dental, PLLC*,
    No. CV H-14-03569, 2016 WL 8136622 (S.D. Tex. Dec. 23, 2016) ...............14

*Coach, Inc. v. J-Design Accessory, LLC*,
    No. 5:12-CV-98, 2013 WL 12140973 (S.D. Tex. Sept. 27, 2013)....................15

*Cole v. Collier*,
    No. 4:14-cv-1698, 2018 WL 2766028 (S.D. Tex. June 8, 2018) ........................5

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*,
    482 U.S. 437 (1987)....................................................................................15, 19

*Family Tree Farms, LLC v. Alfa Quality Produce Inc.*,
    No. 1:08–cv–00481, 2009 WL 565568 (E.D. Cal. Mar. 5, 2009).....................16

*Fletcher v. United States*,
    No. 02-CV-427, 2019 WL 763587 (N.D. Okla. Feb. 21, 2019)........................16

*Fogleman v. ARAMCO*,
    920 F.2d 278 (5th Cir. 1991) .......................................................................15, 17

*Joe Hand Promotions, Inc. v. SNP Hookah Lounge & Grill LLC*,
    No. CV 4:18-01666, 2019 WL 3500854 (S.D. Tex. July 31, 2019) .................15

*Johnson v. Georgia Highway Exp., Inc.*,
    488 F.2d 714 (5th Cir. 1974) .....................................................................*passim*

*Kiva Kitchen & Bath, Inc. v. Cap. Distrib., Inc.*,
    681 F. Supp. 2d 807 (S.D. Tex. 2010)..............................................................2, 3

*Meineke Discount Muffler v. Jaynes*,
    999 F.2d 120 (5th Cir. 1993) ...............................................................................2

*New Homefinders, Inc. v. Network Commc'ns, Inc.*,
   No. 3:06-CV-0442-N, 2008 WL 11422467 (N.D. Tex. Apr. 21,
   2008) .......................................................................................................... 14

*ODonnell v. Harris Cty*,
   No. 4:16-cv-1414, 2019 WL 6219933 (S.D. Tex. Nov. 21, 2019) ............ 5, 9, 10

*Oldham v. Thompson/Ctr. Arms Co.*,
   No. 4:12-CV-2432, 2014 WL 1794861 (S.D. Tex. May 5, 2014) .................... 16

*OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, No. 4:11-cv-3061,
   2015 WL 5098552 (S.D. Tex. Aug. 31, 2015) ................................................... 8

*Quantlab Techs. Ltd. (BVI) v. Godlevsky*,
   317 F. Supp. 3d 943 (S.D. Tex. 2018) ............................................................ 10

*RLIS, Inc. v. Cerner Corp.*,
   No. 3:12-CV-209, 2015 WL 4040569 (S.D. Tex. July 1, 2015) ...................... 18

*Romaguera v. Gegenheimer*,
   162 F.3d 893 (5th Cir. 1998), *decision clarified on denial of reh'g*,
   169 F.3d 223 (5th Cir. 1999) ......................................................................... 11

*S & D Trading Acad., LLC v. AAFIS Inc.*,
   336 F. App'x 443 (5th Cir. 2009) ................................................................... 18

*Saizan v. Delta Concrete Prods. Co., Inc.*,
   448 F.3d 795 (5th Cir. 2006) ..................................................................... 3, 11

*Shuler Drilling Co. Inc. v. So. Mgmt. Servs., Inc.*,
   No. 11–CV–1049, 2015 WL 4173690 (W.D. Ark. July 10, 2015) .................. 16

*Transverse, LLC v. Iowa Wireless Servs., LLC*,
   No. A-10-CV-517-LY, 2020 WL 614590 (W.D. Tex. Feb. 7, 2020) ............... 17

*Von Clark v. Butler*,
   916 F.2d 255 (5th Cir. 1990) ......................................................................... 10

**Statutes**

28 U.S.C. § 1821 .................................................................................................. 19

28 U.S.C. § 1920 .............................................................................................*passim*

15 U.S.C. § 1117(a) ............................................................................2, 14

Fed. R. Civ. P. 54(d)(1)..................................................................1, 14, 20

Federal Rule of Bankruptcy Procedure 2004...........................................17

Plaintiffs Chevron Intellectual Property LLC and Chevron U.S.A. Inc. (collectively, "Chevron")[1] respectfully submit this Motion for Attorneys' Fees and Costs pursuant to this Court's Final Judgment entered May 26, 2020 [Dkt. 281] (the "Judgment") and Federal Rule of Civil Procedure 54(d)(2).  For the reasons set forth below, Chevron requests an award of attorneys' fees in the total amount of $2,146,131.90 and costs in the total amount of $62,392.93.

Defendants Sariel Petroleum, LLC ("Sariel Petroleum") and Arael Doolittle ("Doolittle") are opposed to the relief sought in this Motion.  Defendant Alvin Diaz ("Diaz") has not responded to attempts to confer concerning this Motion.

## BACKGROUND

This Court entered a signed Judgment [Dkt. 281] on May 26, 2020, awarding permanent injunctive relief, $9.6 million in disgorged profits, $6 million in statutory damages, pre- and post-judgment interest, and attorneys' fees and costs in an amount to be determined by submission under Federal Rule of Civil Procedure 54. Accordingly, Chevron timely moves for an award of fees and costs within 14 days of entry of Judgment.

---

[1] Chevron Intellectual Property LLC and Chevron U.S.A. Inc. are legally separate and distinct entities. They are referred to in this motion as "Chevron" for convenience and simplicity only.

## **ARGUMENT**

I.   **ATTORNEYS' FEES**

A.   **The Court determined that this is an "exceptional" case for which Chevron is entitled to attorneys' fees and costs as a prevailing party under the Lanham Act.**

Chevron moves for an award of attorneys' fees under Section 1117(a) of the Lanham Act, pursuant to which "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). In its April 22, 2020 Order, this Court determined based on the jury's findings and its independent assessment of the record that Chevron established by clear and convincing evidence that this is an "exceptional" case for which it is entitled to attorneys' fees and costs as a prevailing party under Section 1117(a). Dkt. 279, ¶¶ 41, 79-87.

B.   **Chevron's lodestar amount is based on the hours reasonably expended at a reasonable hourly rate over a period of two and one-half years litigating a complex and protracted action.**

"In the Fifth Circuit, 'whenever the award of reasonable attorneys' fees is authorized by statute,' courts utilize the 'lodestar' method and apply the twelve factors enumerated in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), in determining what amount of attorneys' fees is reasonable." *Kiva Kitchen & Bath, Inc. v. Cap. Distrib., Inc.*, 681 F. Supp. 2d 807, 813 (S.D. Tex. 2010) (Hittner, J.) (quoting *In re Fender*, 12 F.3d 480, 487 (5th Cir. 1994)); *see also Meineke Discount Muffler v. Jaynes*, 999 F.2d 120, 126 (5th Cir. 1993) (affirming

2

district court's application of the *Johnson* factors in Lanham Act case).  The court may decrease or enhance the [lodestar] amount based on the relative weights of the twelve *Johnson* factors.[2]  *Kiva Kitchen*, 681 F. Supp. 2d at 813 (citing *In re Fender*, 12 F.3d at 487).  However, the lodestar amount carries a "strong presumption of [] reasonableness."  *Saizan v. Delta Concrete Prods. Co., Inc*., 448 F.3d 795, 800 (5th Cir. 2006).

Chevron requests an award of attorneys' fees in the amount of $2,146,131.90, using the lodestar method endorsed by the Fifth Circuit, expressed as the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  *Kiva Kitchen*, 681 F. Supp. 2d at 814 (citing *In re Fender*, 12 F.3d at 487).  Given the protracted length of this litigation and variety of issues involved,

---

[2] The *Johnson* factors are as follows:

1.  the time and labor required;
2.  the novelty and difficulty of the questions;
3.  the skill requisite to perform the legal service properly;
4.  the preclusion of other employment by the attorney due to the acceptance of the case;
5.  the customary fee;
6.  whether the fee is fixed or contingent;
7.  time limitations imposed by the client or the circumstances;
8.  the amount involved and the results obtained;
9.  the experience, reputation, and ability of the attorneys;
10.  the "undesirability" of the case;
11.  the nature and length of the professional relationship with the client; and
12.  awards in similar cases.

*Johnson*, 488 F.2d at 717-19.

Chevron's proposed lodestar includes hours expended by seven attorneys at different periods of time and at varying levels of involvement—four partners,[3] one counsel, three associates, four staff attorneys, one project attorney[4]—and one paralegal.  In support, Chevron submits the affidavit of lead counsel attaching detailed time records that specify, for each attorney and paralegal, the date, the hours expended, and the nature of the work performed.  *See* Exhibit 1, Declaration of Craig Stanfield

---

[3] Kathleen McCarthy is a partner in King & Spalding's New York office with expertise in trademark, copyright, design and advertising law.  Ms. McCarthy expended a limited number of hours consulting with Chevron's legal team on trademark and related law; she had no role in the day-to-day management of the case.

Ed Ripley was formerly a partner in King & Spalding's Houston office with expertise in restructuring and related litigation.  Mr. Ripley expended a limited number of ours consulting with Chevron's legal team on matters related to the Sariel Petroleum bankruptcy and interfacing as necessary with the bankruptcy trustee; he had no role in the day-to-day management of the case.

Bruce Hurley is a partner in King & Spalding's Houston office, frequently serving as first-chair trial counsel in tort and commercial matters.  Mr. Hurley served as lead counsel until early 2019, when he began a protracted trial in a different matter and transitioned his role as lead counsel to Mr. Stanfield.

[4] The four staff attorneys in King & Spalding's E-Discovery practice (Shauna Hentrel, Emily Hogue, Jason Mattox, Thomas McCall) were assigned for a finite period of time to review documents produced from the forensic imaging of Defendant Sariel Petroleum's devices.  It was appropriate for Chevron to rely on attorneys with significantly lower billing rates ($166 per hour to $293 per hour) and experience with e-discovery protocols to accomplish this document review in a cost-efficient, expedited fashion.

The project attorney, Ms. Ann Carroll, has expertise in restructuring and related litigation and assisted Mr. Ripley on a limited basis in matters related to the Sariel Petroleum bankruptcy.

in Support of Plaintiffs' Motion for Attorneys' Fees and Costs ("Stanfield Decl.")

¶ 7.  The Declaration also attaches biographical summaries for each timekeeper.

### 1.    Hours reasonably expended.

In this case, the lodestar amount proposed by Chevron includes approximately

3,890 hours in attorney and paralegal time reasonably expended over a period of two

and one-half years to navigate the challenges presented by the legal issues involved

and Defendants themselves.  Although the number of hours expended is substantial,

the amount is reasonable under the circumstances given the significant time required

to effectively litigate this action.  *See ODonnell v. Harris Cty*, No. 4:16-cv-1414,

2019 WL 6219933, at *25 (S.D. Tex. Nov. 21, 2019); *Cole v. Collier*, No. 4:14-cv-

1698, 2018 WL 2766028, at *13 (S.D. Tex. June 8, 2018).  The approximately 3,890

hours that form the basis for Chevron's request for fees represent only 70% of the

5,524 hours actually required to investigate and litigate this matter.

In this case, Defendants continually abused and evaded the discovery process

as part of their defense strategy.  *See* Dkt. 279, ¶¶ 5, 7, 10, 12, 16, 20-21 (noting six

discovery-related hearings and eight discovery-related orders were necessary to

mandate compliance with basic discovery obligations and prior court orders).[5]  As

further recognized by this Court, the result was the "unnecessarily prolonged course

---

[5] Exhibit 2 to this Motion contains a timeline of relevant filings, discovery requests
and responses, depositions, hearing, orders, and other matters.

of discovery." Dkt. 279, ¶ 84. This is evident in the multiple schedule extensions granted during the pendency of Chevron's motions to compel. Dkts. 66, 89. Defendant Sariel Petroleum also declared bankruptcy in a further attempt to evade depositions and trial, necessitating motions practice to lift the automatic stay of proceedings and modify the scheduling order. Dkt. 279, ¶¶ 17-19; *see also* Dkt. 134 (extending trial deadlines to account for delay caused by bankruptcy proceedings). It also required the assistance of bankruptcy practitioners to help ensure the case proceeded forward despite Defendants' naked attempt to subvert the litigation process.

As a direct result of the prolonged course of discovery and other misdirection, the case did not proceed to trial until February 2020, one full year past its original setting. Had Defendants simply cooperated in connection with the reasonable discovery that Chevron sought to determine the scope of Defendants' scheme, a significant portion of the requested fees would have been avoided.

The claimed hours were reasonably expended on the following tasks

- engagement in pre-suit fact investigation and legal analysis of claims;
- preparation of Complaint and Application for Preliminary and Permanent Injunctive Relief and Brief in Support of Application for Preliminary Injunctive Relief [Dkts. 1, 18] and preparation of First Amended Complaint with related request for leave to file [Dkts. 86, 95];
- preparation and service of third-party subpoenas for critical documents and testimony from Defendants' banking institutions, legal counsel, and other entities and communications with these third parties concerning responses—this discovery was largely necessitated by Defendants' refusal

to preserve evidence or provide information in their possession, custody, and control;

- compliance with Rule 26 conference requirements, including serving and supplementing initial disclosures, and attendance at Rule 16 scheduling conference;

- preparation of responses to written discovery requests and review of information provided in response to Chevron's discovery requests;

- eight depositions of Defendants and third parties (including two depositions of Defendant Sariel Petroleum's deal counsel, one before and one after Defendants Sariel Petroleum and Doolittle's privilege assertions were withdrawn), in addition to defense of the deposition of Chevron witness, Todd Patty;

- preparation of briefing related to motions to compel discovery responses, the production of information, and deposition testimony, including briefing the crime-fraud exception to privilege claims that were later withdrawn by Defendants Sariel Petroleum and Doolittle [Dkts. 44, 50, 55, 61, 67, 71, 73, 74, 82, 87, 108, 116, 121, 135, 141];

- identification of expert witnesses and assistance with preparation of reports;

- conferences concerning and preparation of five motions to modify scheduling orders necessitated by pending motions to compel, each of which was granted [Dkts. 43, 52, 66, 89, 134];

- preparation of a motion for sanctions [Dkts. 107, 171] to address bad-faith discovery conduct that forms the basis for findings of fact and conclusions of law entered by this Court [Dkt. 279, ¶¶ 4-7, 9-12, 14-16, 20-22, 61-62, 84];

- opposition to Defendants' motion for leave to file a baseless third-party complaint [Dkt. 93];

- opposition to motions by defense counsel to withdraw from their representation and motions to reconsider denials of leave to withdraw [Dkts. 106, 127, 147];

- preparation of motions seeking leave to serve Defendants Ken Watson ("Watson"), and Michael Szucs ("Szucs") on an extended timeline and by publication [Dkt. 124, 143, 151, 153, 181, 204];

- work undertaken to obtain default judgments against Defendants Sariel Enterprises, LLC ("Sariel Enterprises"), Watson, and Szucs [Dkts. 115, 165, 212, 215 221, 233];

- analysis of the effect of Defendant Sariel Petroleum's April 2019 sham bankruptcy on these proceedings, consultation with the bankruptcy trustee, preparation of an agreed motion to lift the automatic stay of these proceedings [Dkts. 133-134], and discovery in the bankruptcy in aid of these proceedings;

- preparation of a motion for summary judgment that was successful in obtaining liability findings on trademark infringement, unfair competition, and trademark dilution under federal and state law against Defendants Sariel Petroleum, Doolittle, and Diaz [Dkts. 167, 202, 209];

- preparation of a pretrial order, trial plan, related pretrial briefing as ordered by the Court, objections to Defendants' trial exhibits, objections to Defendants' deposition designations, and proposed jury instructions [Dkts. 216-217, 228, 230, 238, 248, 249, 257];

- preparation for and representation of Chevron in a seven-day jury trial on remedies resulting in partial verdict awarding damages to Chevron and a finding by clear and convincing evidence that Chevron's federally registered trademarks were infringed maliciously, fraudulently, deliberately, and willfully;

- preparation of post-trial briefing as ordered by the Court resulting in entry of findings of fact and conclusions of law [Dkts. 272-273, 277, 279];

- preparation of a motion for entry of judgment and proposed form of judgment and conference with defense counsel concerning same [Dkt. 280]; and

- preparation of this motion for attorneys' fees and costs and conference with defense counsel concerning same [Dkt. 282].[6]

---

[6] OneBeacon Ins. Co. v. T. Wade Welch & Assocs., No. 4:11-cv-3061, 2015 WL 5098552, at *12 (S.D. Tex. Aug. 31, 2015) (awarding fees incurred on preparing fees motion).

Exhibit 1, Stanfield Decl. ¶ 14.  Counsel carefully apportioned work according to each attorney's level of experience and expertise, avoided duplication of effort, and exercised billing judgment to refrain from claiming duplicative hours.  *Id.* ¶ 7.

In submitting its claim for fees, Chevron has endeavored to eliminate hours[7] expended in litigating against Defendants who were voluntarily dismissed from these proceedings and are not the subject of the Final Judgment, as well as hours expended to analyze and weigh pleading amendments and other forms of relief that Chevron did not pursue to conclusion.  *Id.* ¶ 8.  Finally, to further streamline its claim for fees, Chevron has eliminated hours expended by attorneys who, although they provided necessary, periodic assistance, were not regularly staffed on this matter.  *Id.*

### 2. Reasonable hourly rate.

"An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates[,] and the rate is not contested." *ODonnell*, 2019 WL 6219933, at *25 (quoting *Altier v. Worley Catastrophe Response, LLC*, Nos. 11-241, 11-242, 2012 WL 161824, at *22 (E.D. La. Jan. 18, 2012) (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995)));

---

[7] Chevron's request for attorneys' fees accounts for only 3,886 of the 5,525 hours actually expended on this matter, representing an overall reduction of close to $940,000.00 in fees requested.

*Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 317 F. Supp. 3d 943, 951 (S.D. Tex. 2018) (also citing *Kellstrom* for the same proposition).

All of the work done by the timekeepers in this matter has been charged at reasonable and customary rates in the prevailing markets and includes a percentage discount provided to Chevron on every hour expended.  Exhibit 1, Stanfield Decl. ¶ 16.  Rates billed in this case ranged from $765 per hour for one of the lead counsel to $251 per hour for paralegal time.  *Id*. ¶¶ 11-12(a)-(m).  These timekeepers are experienced in litigating complex commercial and trademark-infringement matters and work in geographic areas that command high hourly rates for lawyers with comparable experience and expertise.  *Id*. ¶ 13.  The rates are in keeping with (if not lower than) those routinely paid by clients for King & Spalding's work in matters similar to this.  *Id*. ¶¶ 15-16.  Comparable rates have been approved by district courts in the Fifth Circuit.  *See, e.g., ODonnell*, 2019 WL 6219933, at *25 (finding reasonable hourly rates ranging from $600.00 for lead class counsel to $180.00 for a paralegal).

### C.   *Johnson* factors 2-3, 8-9 demonstrate the reasonableness of the lodestar amount.

In reviewing the *Johnson* factors, a district court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel.  *Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990).  Here, the time and labor involved and the

customary fee are incorporated in the lodestar calculation.  However, the amount involved and the result obtained, and the experience, reputation and ability of counsel, in addition to the novelty and difficulty of the questions and the skill requisite to perform the legal service properly, support the reasonableness, if not enhancement, of the lodestar.

> **1.  Chevron secured broad permanent injunctive relief and a multi-million-dollar damages award in compensation for Defendants' infringement of Chevron's extremely valuable trademarks. (*Johnson* factor No. 8)**

The Fifth Circuit has long held that "the most critical factor in determining a fee award is the degree of success obtained."  *See, e.g.*, *Black v. SettlePou, P.C.*, 732 F.3d 492, 503 (5th Cir. 2013) (quoting *Saizan*, 448 F.3d at 799).  In cases involving multiple claims with "a common core of facts or related legal theories," the focus must be on the "significance of the overall relief obtained"; a district court need not attempt to parse the fees attributable to a specific claim.  *Romaguera v. Gegenheimer*, 162 F.3d 893, 896 (5th Cir. 1998), *decision clarified on denial of reh'g*, 169 F.3d 223 (5th Cir. 1999).

Chevron's Trademarks are among its most important assets.  As a result of long-term use and extensive promotion, these Trademarks are well-known to the trade and the general public, and Chevron has established extensive goodwill and public recognition in and of the marks as exclusive identifiers of Chevron's goods

and services.  Enforcing its trademark rights to prevent fraud—which in turn protects the consumers—is of paramount importance to the company.

Defendants' brazen scheme to falsely associate with Chevron included using the Chevron Trademarks on letterhead, in emails, in oral and written communications, in an online domain name, and on one or more bank accounts. Chevron sought in this case to protect its shareholders' investments and safeguard its brand by shutting down a scheme that used Chevron's name to dupe innocent third parties into fake business deals.

By any measure, Chevron achieved complete success and is the prevailing party.  Chevron obtained a preliminary and permanent injunction; a judgment of $9.6 million in disgorged profits under the Lanham Act, as enhanced by this Court; $6 million in statutory damages against various Defendants under the Lanham Act; and pre- and post-judgment interest.  Dkt. 281.  As further ordered by this Court, no portion of the monetary award is dischargeable in any bankruptcy proceeding.  *Id.* The requested fees represent a fraction of the overall relief obtained.

### 2. Chevron's experienced and reputable legal team possessed the requisite skill to properly perform the required legal services. (*Johnson* factor Nos. 3 and 9)

King & Spalding is a highly reputable international firm routinely representing sophisticated clients such as Chevron with complex legal problems.  In this case, Chevron's legal team—in particular, lead counsel—are experienced trial

attorneys and trademark litigators of exceptional ability and reputation.  Chevron's legal team drew on its skill and ability to pursue in an unusually adversarial proceedings all possible information related to Defendants' scheme.  It further applied that skill and ability in developing a thorough evidentiary record and submitting a lengthy, well-supported motion for summary judgment that secured liability determinations that significantly streamlined the trial in this case.  *See* Dkts. 167. 209.  The legal team then executed a streamlined and effective trial presentation to secure final judgment.  Despite having a dense and complicated record, Chevron's legal team distilled the evidence and arguments into a focused presentation that persuaded the jury and Court on the key issues.

### 3.    This case entailed complex legal issues. (*Johnson* factor No. 2)

This is a trademark-infringement case stemming from many and varied forms of unauthorized use of Chevron's Trademarks, requiring extensive fact investigation and discovery.  Chevron discovered scores of actual and potential transactions valued at close to $1 billion in which Defendants traded on Chevron's name and used its Trademarks to convince businesses that Defendant Sariel Petroleum had a legitimate relationship with Chevron and access to its products.  Ascertaining the full scope of Defendants' scheme required identifying and tracing in financial and other records the money that Defendants took in and disposition of those funds.

13

Defendants repeatedly obstructed this process in concealing relevant evidence, impeding discovery of electronically stored information, using the attorney-client privilege to shield their fraud, and refusing to appear for depositions until ordered to do so in avoidance of contempt charges.   These bad-faith litigation tactics necessitated six discovery-related hearings, eight discovery-related court orders, and numerous extensions of the trial term.   Dkt. 279, ¶ 21, 61-62.   Counsel dealt with these issues as swiftly and efficiently as possible under the circumstances.

## II.   COSTS

Chevron requests an award of $62,392.93 for costs incurred in this litigation on Chevron's behalf.   These costs were reasonable and necessary in pursuit of the results obtained by Chevron in this case.

A prevailing party may be awarded the costs of the action under the Federal Rules of Civil Procedure and the Lanham Act.   Fed. R. Civ. P. 54(d)(1) ("[C]osts— other than attorney's fees—should be allowed to the prevailing party."); 15 U.S.C. § 1117(a) (providing that a prevailing plaintiff under the Lanham Act "shall be entitled, subject to the principles of equity, to recover ... the costs of the action"); *see also, e.g.*, *ClearChoice Holdings, LLC v. Clear Choice Dental, PLLC*, No. CV H-14-03569, 2016 WL 8136622, at *7 (S.D. Tex. Dec. 23, 2016); *New Homefinders, Inc. v. Network Commc'ns, Inc.*, No. 3:06-CV-0442-N, 2008 WL 11422467, at *1 (N.D. Tex. Apr. 21, 2008).

"Costs" as used in Rule 54(d)(1) are defined in 28 U.S.C. § 1920 (taxation of costs). *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-45 (1987); *see also, e.g.*, *Coach, Inc. v. J-Design Accessory, LLC*, No. 5:12-CV-98, 2013 WL 12140973, at *4 (S.D. Tex. Sept. 27, 2013) ("In terms of costs, generally, the Fifth Circuit does not allow those that do not fit within one of the categories listed in 28 U.S.C. § 1920.") (citing *Gaddis v. United States*, 381 F.3d 444, 476 (5th Cir. 2004)). Chevron's requested costs fall within the following subsections of Section 1920: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; and (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case. *See* 28 U.S.C. § 1920. Whether something was "necessarily obtained for use in the case is a factual determination to be made by the district court . . . " *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991).

### *Fees of the clerk and marshal—Exhibit 1, Stanfield Decl. ¶ 18(a)-(b)*

Under Section 1920(1), Chevron seeks $6,835.76 in costs incurred as follows:

- $400 case initiation filing fee. *See Joe Hand Promotions, Inc. v. SNP Hookah Lounge & Grill LLC*, No. CV 4:18-01666, 2019 WL 3500854, at *5 (S.D. Tex. July 31, 2019) (citing *Jensen v. Lawler*, 338 F. Supp. 2d 739, 745 (S.D. Tex. 2004) ("Under § 1920, Jensen can recover her filing fee. The statute specifically authorizes the taxing of costs for '[f]ees of the clerk and marshal.'" (quoting 28 U.S.C. § 1920(1))).

- $6,435.76 for service of process by publication, as authorized by this Court

15

(Dkt. 204), on Defendants Watson and Szucs in the *Houston Chronicle* once per week for 4 consecutive weeks. *See Fletcher v. United States*, No. 02-CV-427, 2019 WL 763587, at *15 (N.D. Okla. Feb. 21, 2019); *Shuler Drilling Co. Inc. v. So. Mgmt. Servs., Inc.*, No. 11–CV–1049, 2015 WL 4173690, at *3 (W.D. Ark. July 10, 2015); *Family Tree Farms, LLC v. Alfa Quality Produce Inc.*, No. 1:08–cv–00481, 2009 WL 565568, at *10 (E.D. Cal. Mar. 5, 2009) (all awarding costs for service by publication under Section 1920).

### *Fees for printed or electronically recorded transcripts necessarily obtained for use in the case—Exhibit 1, Stanfield Decl. ¶ 18(c)-(f)*

Under Section 1920(2), Chevron seeks $44,192.26 in costs incurred for court-reporter fees, transcripts, and deposition videography necessarily obtained for use in this case.

- $2,585.20 for nine hearing transcripts. *See, e.g.*, *Oldham v. Thompson/Ctr. Arms Co.*, No. 4:12-CV-2432, 2014 WL 1794861, at *5 (S.D. Tex. May 5, 2014) ("Because Section 1920(2) allows costs related to 'transcripts necessarily obtained for use in the case,' without specifying the kind of transcripts, costs associated with transcripts of motion hearings are allowable." (citing *Crevier–Gerukos v. Eisai, Inc*., No. H–11–0434, 2014 WL 108730, at *1 (S.D. Tex. Jan. 9, 2014)). Six of these hearings occurring between August 2018 and June 2019 concerned matters in Chevron's motions to compel discovery, and some included court-ordered appearances by Defendants to answer questions under oath and cooperate in scheduling of depositions and surrender of electronic devices for forensic imaging. Dkt. 279, ¶¶ 5, 7, 10, 12, 16, 20-21. One hearing occurring in September 2019 concerned default judgments. Dkt. 279, ¶ 28, 31. The remaining two hearings in November 2019 and February 2020 were held to address pretrial matters, including unresolved legal issues and presentation of evidence. All of the transcripts were necessarily obtained for use in the case as they assisted counsel for Chevron in pursuing full and fair discovery and in preparing for trial.

- $9,576.00 for trial transcripts (7 volumes), including $6,534.00 in daily

original transcripts and \$3,042.00 in realtime charges.[8]   *See, e.g.,*
*Transverse, LLC v. Iowa Wireless Servs., LLC,* No. A-10-CV-517-LY,
2020 WL 614590, at *5 (W.D. Tex. Feb. 7, 2020) ("Trial transcripts are
traditionally awarded as costs." (citing *Evert Fresh Corp. v. Pactiv Corp.*,
No. 4:09-CV-1936, 2011 WL 2672353, at *3 (S.D. Tex. July 7, 2011)).

- \$21,485.06 for nine deposition transcripts and three examination
  transcripts under Federal Rule of Bankruptcy Procedure 2004.[9]  Chevron
  relied on these transcripts in preparing its motion for summary judgment
  that resulted in key liability findings and in preparing for trial.  *Id.* ("If, at
  the time it was taken, a deposition could reasonably be expected to be used
  for trial preparation, rather than merely for discovery, it may be included
  in the costs of the prevailing party." (quoting *Fogleman*, 920 F.2d at 285)).
  Furthermore, as the Court will recall, Messrs. Doolittle and Diaz had to be
  confronted with their prior testimony during trial an extraordinary number
  of times.

  o The Rule 2004 examinations included those of Doolittle and his
    business partner in Sariel Petroleum, Tracy Martinez, and were
    necessary to inquire into matters set forth in the Statement of Financial
    Affairs and related Schedules submitted in the bankruptcy proceedings.

  o The depositions included those of Defendants Sariel Petroleum,
    Doolittle (in two volumes), Diaz, and Arnold Salinas; Chevron witness
    Todd Patty; and non-parties Elizabeth Ares (BBVA Compass Bank)
    and Jason Ostrom (Defendant Sariel Petroleum's deal counsel).
    Chevron was forced to depose Mr. Ostrom on two separate occasions
    (June 28, 2018 and March 4, 2019) because Defendants Sariel
    Petroleum and Doolittle asserted, and later withdrew, claims of
    attorney-client privilege that Chevron challenged on the basis of the
    crime-fraud exception.

---

[8] Chevron submits that both daily and realtime transcription were necessary to its
examination of witnesses, presentation of evidence, and analysis of legal issues
during trial.

[9] A chart attached to the Stanfield Declaration at ¶ 18(e) itemizes the costs associated
with each deposition.   While the total costs incurred for these transcripts was
\$31,742.16, the \$21,485.06 claimed by Chevron subtracts the costs associated with
realtime, rough transcripts, and costs for expediting.

- Chevron further seeks $10,546.00 in costs incurred for deposition videography as set forth in the chart attached to Exhibit 1, Stanfield Decl. ¶ 18(f). *See, e.g., S & D Trading Acad., LLC v. AAFIS Inc*., 336 F. App'x 443, 451 (5th Cir. 2009) (noting in the context of deposition videography that 28 U.S.C. § 1920 has been amended to allow for the recovery of "electronically recorded transcripts"); *Baisden v. I'm Ready Prods., Inc*., 793 F. Supp. 2d 970, 976 (S.D. Tex. 2011) (allowing recovery of the cost of videotaping depositions based on amendment to 28 U.S.C. § 1920 allowing recovery of "electronically recorded transcripts"). Although not used at trial, these deposition transcripts were necessarily obtained by Chevron in anticipation of the possible unavailability of these witnesses at the time the case proceeded to trial.

### Fees and disbursements for printing and witnesses—Exhibit 1, Stanfield Decl. ¶ 18(g)

Under Section 1920(3), Chevron seeks $320.01 in witness fees for discovery and trial subpoenas.

### Fees for exemplification and copies of papers necessarily obtained for use in the case—Exhibit 1, Stanfield Decl. ¶ 18(h)-(i)

Under Section 1920(4), Chevron seeks $10,964.90 in costs falling within the category of "exemplification":

- $5,460.00 for the services of an audio/visual technician (Helen Palmore of Magna Legal Services) at trial.[10] Ms. Palmore's services were necessarily obtained as she assisted Chevron's trial counsel in efficiently locating and displaying exhibits for use during witness testimony and opening and closing arguments. *See, e.g., RLIS, Inc. v. Cerner Corp*., No. 3:12-CV-209, 2015 WL 4040569, at **3-4 (S.D. Tex. July 1, 2015) (awarding reasonable and necessary costs related to an AV technician at trial (citing

---

[10] Ms. Palmore's services were billed at a rate of $195 per hour as reflected in the invoice attached to Exhibit 1, Stanfield Decl. ¶ 18(h). While the Magna Legal Services invoice does not break out Ms. Palmore's time in the courtroom, $5,460.00 represents an approximation of 28 hours spent in the courtroom at her customary rate of $195 per hour.

*J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 760 F.2d 613, 615 (5th Cir. 1985), and *Favata v. Nat'l Oilwell Varco, LP*, No. 2:12–cv–82, 2014 WL 5822781, at **4–5 (S.D. Tex. Nov. 10, 2014)).

- $5,504.90 for copies of papers (exhibits, caselaw, motion papers) necessarily utilized at hearings ($329.74), depositions ($883.32 and $300.47), and trial ($3,991.37).  The exemplification costs for trial are the most significant and represent costs incurred to furnish the Court and jury with binders of exhibits, as well as ensure a working set of exhibits for use by Chevron's counsel in the courtroom.

### Witness Attendance Fees Under 28 U.S.C. § 1821—Exhibit 1, Stanfield Decl. ¶ 18(j)

Additionally, under 28 U.S.C. § 1821,[11] Chevron seeks $80.00 in witness fees ($40.00 per witness) for attendance at trial by Ambreen Salters, an expert witness for Chevron, and Desmond Johnson, a Chevron employee.  Mr. Johnson appeared to testify on February 20, 2020; Ms. Salters appeared on February 21, 2020.

---

[11]   Stating in relevant part:

> (a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United States, or before a United States Magistrate Judge, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section.
>
>    . . .
>
> (b) A witness shall be paid an attendance fee of $40 per day for each day's attendance. . . .

28 U.S.C. § 1821(a)-(b).

## <u>CONCLUSION</u>

For the foregoing reasons, Chevron requests an award of $2,146,131.90 in attorneys' fees and $62,392.93 in costs pursuant to the Judgment of this Court entered on May 26, 2020 and Federal Rule of Civil Procedure 54(d).

Respectfully submitted this 9th day of June 2020.

By: */s/ Craig Stanfield*

Craig Stanfield
Attorney-in-Charge
Texas Bar No. 24051371
S.D. Tex. Fed. ID. No. 789722
Christie Cardon
Texas Bar No. 24036326
S.D. Tex. Fed. ID No. 567834
Abby L. Parsons
Texas Bar No. 24094303
S.D. Tex. Fed. ID No. 2618689
KING & SPALDING LLP
1100 Louisiana St., Ste. 4000
Houston, Texas 77002
Tel: 713-751-3200
cstanfield@kslaw.com
ccardon@kslaw.com
aparsons@kslaw.com

*Of Counsel:*

Kathleen E. McCarthy
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel: (212) 556-2345
Fax: (212) 556-2222
kmccarthy@kslaw.com

*Attorneys for Plaintiffs Chevron
Intellectual Property LLC and Chevron
U.S.A. Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 9, 2020, I electronically filed the foregoing document

with the Clerk of the Court using the CM/ECF system which automatically sends

e-mail notification of such filing to all counsel of record.

*/s/ Craig Stanfield*
*Attorney for Plaintiffs*
*Chevron Intellectual Property LLC*
*Chevron U.S.A. Inc.*