# EXHIBIT 1

Declaration In Support of Plaintiffs' Motion for Attorneys' Fees and Costs (Motion filed separately)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Chevron Intellectual Property LLC and Chevron U.S.A. Inc.,<br><br>  Plaintiffs,<br><br>  v.<br><br>Sariel Petroleum, LLC, Sariel Enterprises, LLC, Arael Doolittle, Tracy K. Martinez, Bryan Martinez, Alvin Diaz, Arnold Salinas, Ken Watson, Rodney Shank, and Michael Szucs,<br><br>  Defendants. | Case No. 4:18-cv-158 |

### DECLARATION OF CRAIG STANFIELD IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

Pursuant to 28 U.S.C. § 1746, I, Craig Stanfield, under penalty of perjury, declare as follows:

1. I am over twenty-one (21) years of age, and I am fully competent to make this Declaration.

2. This Declaration and the accompanying exhibits are presented in support of Plaintiffs Chevron Intellectual Property, LLC and Chevron U.S.A. Inc.'s ("Chevron's")[1] Motion for Attorneys' Fees.

---

[1] Chevron Intellectual Property LLC and Chevron U.S.A. Inc. are separate and distinct entities but

3. I am a partner with the law firm of King & Spalding LLP ("King & Spalding"), which represents Chevron Intellectual Property, LLC and Chevron U.S.A. Inc. in this matter. I make this Declaration based on my own personal knowledge and experience and the business records of King & Spalding.

4. I am a litigation partner with nearly fifteen years of experience, including serving as first-chair trial counsel in commercial and tort matters in state and federal courts nationally. I graduated from Texas A&M University in 2001 and obtained my J.D. from American University's Washington College of Law in 2005. I clerked for Wanda Fowler on the Fourteenth Court of Appeals before entering private practice. I have received various recognitions and awards for my litigation and trial work over the years. I am admitted to practice law and am in good standing to do so in the State of Texas. I practice in King & Spalding's Houston office in the Trial & Global Disputes Practice Group.

5. I am familiar with the economics of law practice, billing rates, billing practices, the cost and recovery of litigation support services and other expenses of litigation, and the setting and collection of legal fees in a variety of circumstances, including cases of factual and legal complexity comparable to the instant case. I have derived this knowledge from personal experience negotiating fee agreements with sophisticated consumers of legal services, billing and collecting fees and

---

are referred to in this Motion as "Chevron" for simplicity.

expenses from clients, and regularly representing clients on an hourly rate basis as well as on contingent-fee-type arrangements.

6. I am familiar with my firm's policies, practices, and procedures governing the recording and maintenance of time and expense records. I am also familiar with King & Spalding's standard hourly rates customarily charged for professional services to clients, particularly in the firm's Houston office, where I am resident.

7. I have personally supervised work done by King & Spalding attorneys and other staff in this matter. In assigning attorneys to work on this case, I have endeavored to keep personnel assigned to this case to the number reasonably necessary to efficiently serve the needs of Chevron. I carefully apportioned work according to each attorney's level of experience and expertise, avoided duplication of effort, and exercised billing judgment to refrain from charging for unproductive, excessive or redundant time.

8. In submitting its claim for fees, Chevron has endeavored to eliminate hours expended in litigating against Defendants who were voluntarily dismissed from these proceedings and are not the subject of the Final Judgment, as well as hours expended to analyze and weigh pleading amendments and other forms of relief that Chevron did not pursue to conclusion. Finally, to further streamline its claim

for fees, Chevron has eliminated time expended by attorneys who, although they provided periodic assistance, were not regularly staffed on this matter.

9. King & Spalding's Detailed Billing Reports (the "Reports"), which are attached hereto as Exhibits 1-29, reflect the attorneys' fees and expenses incurred by Chevron in investigating, filing, and prosecuting this matter on behalf of Chevron for the period December 2017 through May 2020.  In addition, while King & Spalding has not yet submitted to Chevron a report for attorneys' fees incurred in June 2020, I have reviewed the hours recorded by King & Spalding timekeepers for this period and can attest to 34.5 hours expended by Christie Cardon (12 hours at $625 per hour), Robert Sheppard (3.5 hours at $540 per hour), and Kayla Miller (19 hours at $251 per hour) in an amount totaling $14,159.00 for preparation of Chevron's Motion for Attorneys' Fees and Costs.  This amount is included in the request for $2,146,131.90 in attorneys' fees.

10. Each Report itemizes, by date and timekeeper, the nature of each task performed, the amount of time necessary to complete each task, and the fees incurred by Chevron.  Redactions in the Reports include entries for time that Chevron will not seek to recover for a variety of reasons.

11. My firm biography is attached as Exhibit 30.  My hourly rate in this matter ranged from $723 to $765, which includes a substantial discount from my

standard commercial rate. The other rates listed below likewise include a substantial discount from those professionals' standard commercial rates.

12. Other attorney timekeepers whose entries appear in the attached Reports include:

- a. <u>R. Bruce Hurley, III</u>. Mr. Hurley is a partner at King & Spalding, where he has practiced law in the firm's Trial & Global Disputes Practice Group since October 2000 with extensive experience as first-chair trial counsel in tort and commercial matters. Mr. Hurley maintains a national trial practice. He is admitted to practice law and is in good standing to do so in the State of Texas. Mr. Hurley obtained a B.S.S. from Southwestern University in 1986 and a J.D. from the University of Houston in 1989. His hourly rate in this matter ranged from $575 to $728. Mr. Hurley's firm biography is attached as Exhibit 31.

- b. <u>Kathleen McCarthy</u>. Ms. McCarthy is a partner at King & Spalding in the firm's Trial & Global Disputes Practice Group and focuses her practice on trademark, copyright, design and advertising law. She is admitted to practice law and is in good standing to do so in the State of New York. Ms. McCarthy obtained a B.A. from College of the Holy Cross and a J.D. from the Columbia University School

5

of Law. Her hourly rate in this matter was $714. Ms. McCarthy's firm biography is attached as Exhibit 32.

c. <u>Edward Ripley</u>. Mr. Ripley is currently a shareholder at Andrews Myers, P.C. in Houston, Texas, preceding which he was a partner at King & Spalding in the firm's Corporate, Finance, and Investments Practice Group for over 11 years, specializing in restructuring and related litigation. He is admitted to practice law and is in good standing to do so in the State of Texas. Mr. Ripley obtained a B.A. from the University of Akron and a J.D. from the Drake University Law School. His hourly rate in this matter was $737. Mr. Ripley's biography with his current firm, Andrews Myers, is attached as Exhibit 33.

d. <u>Christie Cardon</u>. Ms. Cardon is counsel at King & Spalding and has practiced law in the firm's Trial & Global Disputes Practice Group since September 2003 with a focus on complex commercial litigation. She is admitted to practice law and is in good standing to do so in the State of Texas. Ms. Cardon obtained a B.A. from Sweet Briar College in 1996 and a J.D. from the University of Texas School of Law in 2002. Her hourly rate in this matter ranged from

$575 to $625.  Ms. Cardon's firm biography is attached as Exhibit 34.

e. <u>Abby Parsons</u>.  Ms. Parsons is a senior associate at King & Spalding and has practiced law in the firm's Trial & Global Disputes Practice Group since April 2015 with a focus on complex intellectual property matters.  She is admitted to practice law and is in good standing to do so in the States of Texas and Illinois.  Ms. Parsons obtained a B.A. from the University of Northern Iowa in 2004 and a J.D. from the University of Iowa College of Law in 2008.  Her hourly rate in this matter was $633.  Ms. Parsons's firm biography is attached as Exhibit 35.

f. <u>Samantha Ade</u>.  Ms. Ade is a senior associate at King & Spalding and has practiced law in the firm's Trial & Global Disputes Practice Group since October 2010 with a focus on complex commercial litigation.  She is admitted to practice law and is in good standing to do so in the State of Texas.  Ms. Ade obtained a B.A. from the University of New Mexico in 2005 and a J.D. from the University of Texas School of Law in 2008.  Her hourly rate in this matter was $578. Ms. Ade's firm biography is attached as Exhibit 36.

g. <u>Robert Sheppard</u>. Mr. Sheppard is an associate at King & Spalding and has practiced law in the firm's Trial & Global Disputes Practice Group since April 2019. He is admitted to practice law and is in good standing to do so in the State of Texas. Mr. Sheppard obtained a B.A. from the University of North Carolina at Chapel Hill in 2007 and a J.D. from the University of Mississippi School of Law in 2014. His hourly rate in this matter ranged from $497 to $540. Mr. Sheppard's firm biography is attached as Exhibit 37.

h. <u>Ann Carroll</u>. Ms. Carroll is a project attorney at King & Spalding and has practiced law in the firm's Corporate, Finance, and Investments Practice Group since October 2016. She is admitted to practice law and is in good standing to do so in the States of Georgia and Tennessee. Ms. Carroll obtained a B.A. from Davidson College in 2006 and a J.D. from the University of Georgia in 2010. Her hourly rate in this matter was $525. Ms. Carroll's firm biography is attached as Exhibit 38.

i. <u>Jason Mattox</u>. Mr. Mattox is a senior staff attorney with King & Spalding's E-Discovery practice and has supervised document review projects and provided e-discovery forensic consultation for the firm since 2003. He is admitted to practice law and is in good

standing to do so in the State of Georgia. Mr. Mattox obtained a B.A. from the University of San Diego in 1994 and a J.D. from Santa Clara University in 1997. His hourly rate in this matter was $293. Mr. Mattox's firm biography is attached as Exhibit 39.

j. <u>Shauna Hentrel</u>. Ms. Hentrel has been a staff attorney with King & Spalding's E-Discovery practice since 2006. She is admitted to practice law and is in good standing to do so in the State of Georgia. Ms. Hentrel obtained a J.D. from Indiana University. Her hourly rate in this matter was $200. Ms. Hentrel's firm biography is attached as Exhibit 40.

k. <u>Thomas McCall</u>. Mr. McCall has been a senior staff attorney with King & Spalding's E-Discovery practice since 2017. He is admitted to practice law and is in good standing to do so in the State of Georgia. Mr. McCall obtained a B.S. from the Middle Tennessee State University in 2013 and a J.D. from Atlanta's John Marshall Law School in 2016. His hourly rate in this matter was $166. Mr. McCall's firm biography is attached as Exhibit 41.

l. <u>Emily Hogue</u>. Ms. Hogue has been a staff attorney with King & Spalding's E-Discovery practice since 2015. She is admitted to practice law and is in good standing to do so in the State of Georgia.

9

Ms. Hogue obtained a B.A. from Rhodes College in 1997 and a J.D. from the University of Mississippi School of Law in 2001. Her hourly rate in this matter was $191. Ms. Hogue's firm biography is attached as Exhibit 42.

m. <u>Kayla Miller</u>. Ms. Miller has been a paralegal in King & Spalding's Trial & Global Disputes Practice Group since 2000. Her hourly rate in this matter was $251.

13. These timekeepers are experienced in litigating complex commercial and intellectual-property matters and work in geographic areas that command high hourly rates for lawyers with comparable experience and expertise.

14. King & Spalding's timekeepers necessarily expended time on the following tasks in pursuit of the Final Judgement in this case:

a. engagement in pre-suit fact investigation and legal analysis of claims;
b. preparation of Complaint and Application for Preliminary and Permanent Injunctive Relief and Brief in Support of Application for Preliminary Injunctive Relief [Dkts. 1, 18] and preparation of First Amended Complaint with related request for leave to file [Dkts. 86, 95];
c. preparation and service of third-party subpoenas for critical documents and testimony from Defendants' banking institutions, legal counsel, and other entities and communications with these third parties concerning responses—this discovery was largely necessitated by Defendants' refusal to preserve evidence or provide information in their possession, custody, and control;
d. compliance with Rule 26 conference requirements, including serving and supplementing initial disclosures, and attendance at Rule 16 scheduling conference;

10

e. preparation of responses to written discovery requests and review of information provided in response to Chevron's discovery requests;

f. eight depositions of Defendants and third parties (including two depositions of Defendant Sariel Petroleum's deal counsel, one before and one after Defendants Sariel Petroleum and Doolittle's privilege assertions were withdrawn), in addition to defense of the deposition of Chevon witness, Todd Patty;

g. preparation of briefing related to motions to compel discovery responses, the production of information, and deposition testimony, including briefing the crime-fraud exception to privilege claims that were later withdrawn by Defendants Sariel Petroleum and Doolittle [Dkts. 44, 50, 55, 61, 67, 71, 73, 74, 82, 87, 108, 116, 121, 135, 141];

h. identification of expert witnesses and assistance with preparation of reports;

i. conferences concerning and preparation of five motions to modify scheduling orders necessitated by pending motions to compel, each of which was granted [Dkts. 43, 52, 66, 89, 134];

j. preparation of a motion for sanctions [Dkts 107, 171] to address bad-faith discovery conduct that forms the basis for findings of fact and conclusions of law entered by this Court [Dkt. 279, ¶¶ 4-7, 9-12, 14-16, 20-22, 61-62, 84];

k. opposition to Defendants' motion for leave to file a baseless third-party complaint [Dkt. 93];

l. opposition to motions by defense counsel to withdraw from their representation and motions to reconsider denials of leave to withdraw [Dkts. 106, 127, 147];

m. preparation of motions seeking leave to serve Defendants Ken Watson ("Watson") and Michael Szucs ("Szucs") on an extended timeline and by publication [Dkt. 124, 143, 151, 153, 181, 204];

n. work undertaken to obtain default judgments against Defendants Sariel Enterprises, LLC ("Sariel Enterprises"), Watson, and Szucs [Dkts. 115, 165, 212, 215 221, 233];

o. analysis of the effect of Defendant Sariel Petroleum's April 2019 bankruptcy on these proceedings, consultation with the bankruptcy trustee, preparation of an agreed motion to lift the automatic stay of these

11

      proceedings [Dkts. 133-134], and discovery in the bankruptcy in aid of these proceedings;

p. preparation of a motion for summary judgment that was successful in obtaining liability findings on trademark infringement, unfair competition, and trademark dilution under federal and state law against Defendants Sariel Petroleum, LLC, Doolittle, and Diaz [Dkts. 167, 202, 209];

q. preparation of a pretrial order, trial plan, related pretrial briefing as ordered by the Court, objections to Defendants' trial exhibits, objections to Defendants' deposition designations, and proposed jury instructions [Dkts. 216-217, 228, 230, 238, 248, 249, 257];

r. preparation for and representation of Chevron in a seven-day jury trial on remedies resulting in partial verdict awarding damages to Chevron and a finding by clear and convincing evidence that Chevron's federally registered trademarks were infringed maliciously, fraudulently, deliberately, and willfully;

s. preparation of post-trial briefing as ordered by the Court resulting in entry of findings of fact and conclusions of law [Dkts. 272-273, 277, 279];

t. preparation of a motion for entry of judgment and proposed form of judgment and conference with defense counsel concerning same [Dkt. 280]; and

u. preparation of this motion for attorneys' fees and costs and conference with defense counsel concerning same [Dkt. 282].

15.    Based on my experience, I believe the time expended by the attorneys at King & Spalding in the representation of Chevron in this matter was a reasonable amount of time in light of the trademark claims asserted and relief sought, the complicated and protracted nature of the discovery proceedings, the dispositive motions, a seven-day jury trial, and the post-trial briefing requested by the Court.

16.    All of the work done by the timekeepers in this matter has been charged at reasonable and customary rates and includes a discount provided to Chevron.

These rates are in keeping with (if not lower than) those routinely paid by clients for King & Spalding's work, and the work of these individuals in particular, in matters similar to this one.  In my experience, these billing rates also are within the range of the market rate charged by other comparable firms in Houston for matters of similar complexity.

17.     Accordingly, Chevron respectfully requests a total award of attorneys' fees in the amount of $2,146,131.90.

18.     Chevron further seeks an award of costs in the amount of $62,392.93 itemized as follows and accompanied by appropriate documentation:

   a. $400 filing fee (*see* Exhibit 43);

   b. $6,435.76 for service of process by publication, as authorized by this Court (Dkt. 204), on Defendants Watson and Szucs in the Houston Chronicle once per week for 4 consecutive weeks (Exhibit 44);

   c. $2,585.20 in costs for nine hearing transcripts necessarily obtained for use in the case (*see* Exhibits 45-53);

   d. $9,576.00 for trial transcripts (7 volumes), including $6,534.00 in daily original transcripts and $3,042.00 in realtime charges necessarily obtained for use in this case (*see* Exhibit 54);

   e. $21,485.06 for nine deposition transcripts and three examination transcripts under Federal Rule of Bankruptcy Procedure 2004, all

  necessarily obtained for use in this case (*see* Exhibit 55 (chart of depositions and examinations) and 56-67 (invoices));

f. $10,546.00 in costs incurred for deposition videography necessarily obtained for use in this case (*see* Exhibits 68-74);

g. $320.01 in witness fees for discovery subpoenas (Merrill Lynch, Twin Peaks, Tracy Martinez bankruptcy exam, Plains Capital Bank, BBVA Compass Bank) and a trial subpoena (Tracy Martinez) necessarily obtained for use in this case (*see* Exhibits 75-80);

h. $5,460.00 for the services of an audio/visual technician (Helen Palmore of Magna Legal Services) necessarily procured for use at trial (*see* Exhibit 81);

i. $5,504.90 for copies of papers (exhibits, caselaw, motion papers) necessarily utilized at hearings ($329.74), depositions ($883.32 and $300.47), and trial ($3,991.37) (*see* Exhibits 82-85); and

j. $80.00 in witness fees ($40.00 per witness) under 28 U.S.C. § 1821 for attendance at trial by Ambreen Salters, an expert witness for Chevron who testified on February 21, 2020, and Desmond Johnson, a Chevron employee who testified on February 20, 2020.

19. I declare under penalty of perjury that the foregoing is true and correct.

Date: June 9, 2020

_____
Craig Stanfield
Partner, King & Spalding LLP

15