IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHEVRON INTELLECTUAL PROPERTY LLC *and* CHEVRON U.S.A. INC., | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. H-18-158 |
| SARIEL PETROLEUM LLC *et al.*, | § § § | |
| Defendants. | § § § | |

ORDER

Pending before the Court is Plaintiffs' Motion for Attorneys' Fees and Costs (Document No. 282). Having considered the motion, submissions, and applicable law, the Court determines the motion should be granted.

I. BACKGROUND

This is a trademark infringement case. Plaintiff Chevron Intellectual Property LLC ("Chevron Intellectual") owns several federally-registered trademarks ("Chevron's Trademarks"). Plaintiff Chevron U.S.A. Inc. ("Chevron USA") is the primary licensee of Chevron's Trademarks. Defendants Sariel Petroleum LLC ("Sariel Petroleum") and Sariel Enterprises LLC ("Sariel Enterprises") (Sariel Petroleum and Sariel Enterprises, collectively, the "Sariel Entities") are business entities that are allegedly related. Defendants Alvin Diaz ("Diaz"), Arael Doolittle

("Doolittle"), Bryan Martinez ("B. Martinez"), Tracy Martinez ("T. Martinez"), Arnold Salinas ("Salinas"), Rodney Shank ("Shank"), Michael Szucs ("Szucs"), and Ken Watson ("Watson")[1] are individuals who allegedly participated in a scheme with the Sariel Entities to falsely associate with Chevron Intellectual and Chevron USA (collectively, "Chevron") and to infringe on Chevron's Trademarks. Chevron specifically alleges the Sariel Entities and the Individual Defendants, without authorization, used Chevron's Trademarks on letterhead, in emails, in oral and written communications, with regard to online domain names, and on one or more bank accounts.

On January 19, 2018, Chevron filed this lawsuit. Chevron brought claims against the Sariel Entities and the Individual Defendants under federal and Texas law for trademark infringement, unfair competition, trademark dilution, trademark counterfeiting, cyberpiracy, contributory trademark infringement, false advertising, and civil conspiracy. On September 24, 2019, the Court granted summary judgment in Chevron's favor as to liability on the claims for trademark infringement, unfair competition, and trademark dilution against Diaz, Doolittle, and Sariel Petroleum[2] under the Lanham Act and Texas law. On October 28, 2019, the Court entered

---

[1] The Court refers to Doolittle, Diaz, B. Martinez, T. Martinez, Salinas, Shank, Szucs, and Watson, collectively, as the "Individual Defendants."

[2] The Court refers to Diaz, Doolittle, and Sariel Petroleum, collectively, as the "Trial Defendants."

default judgment as to liability and permanent injunctive relief against Sariel Enterprises. On November 21, 2019, Chevron voluntarily dismissed B. Martinez, T. Martinez, Salinas, and Shank. On December 12, 2019, the Court entered default judgment as to liability and permanent injunctive relief against Szucs and Watson.

On February 18, 2020, a jury trial commenced on the remaining issues against the Trial Defendants. On February 26, 2020, the jury returned a partial verdict—which included issues the Court ruled would be treated as strictly advisory under Federal Rule of Civil Procedure 39(c)—unanimously finding Chevron was entitled to $1,100,000.00 of disgorged profits and further unanimously finding Chevron's Trademarks were infringed maliciously, fraudulently, deliberately, or willfully. On April 22, 2020, the Court entered findings of fact and conclusions of law that, *inter alia*, awarded Chevron $9,600,000.00 of enhanced disgorged profits and determined this was an exceptional case warranting attorney fees. On May 26, 2020, the Court entered final judgment. On June 9, 2020, Chevron moved for an award of $2,203,698.20[3] in attorney fees and $62,392.93 in costs.

---

[3] In the motion, Chevron requested $2,146,131.90 in attorney fees. Chevron's reply explains that amount resulted from a "calculation error" and the correct amount of the request is $2,203,698.20 in attorney fees. *Plaintiffs' Reply in Support of Motion for Attorneys' Fees and Costs*, Document No. 285 at 3 n.1 [hereinafter *Plaintiffs' Reply*].

## II. LAW & ANALYSIS

Chevron moves for an award of $2,203,698.20 in attorney fees[4] and $62,392.93 in costs according to the following rates charged and hours billed:

| **Billing Individual** | **Average Rate**[5] | **Hours** |
|---|---|---|
| Christie Cardon | $608.98 | 1,392.5 |
| Abby Parsons | $633.00 | 807.4 |
| Craig Stanfield | $738.09 | 521.3 |
| Kayla Miller | $251.08 | 511.1 |
| Samantha Ade | $578.00 | 175.3 |
| Robert Sheppard | $514.87 | 143.9 |
| Bruce Hurley | $709.73 | 111.3 |
| Shauna Hentrel | $200.00 | 44.5 |
| Jason Mattox | $293.00 | 43.6 |
| Thomas McCall | $166.00 | 40.7 |
| Emily Hogue | $191.00 | 34.7 |

---

[4] Chevron seeks attorney fees under 15 U.S.C. § 1117(a). Under § 1117(a), the Court "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Court has already determined this is an exceptional case warranting Chevron—the prevailing party—an award of attorney fees. *Order*, Document No. 279 at 22–24.

[5] Because Chevron's attorneys' hourly rates fluctuated during this litigation, the Court calculated the average hourly rate of each attorney by dividing the total dollar amount each attorney billed by the total hours each attorney recorded.

4

| Kathleen McCarthy | $713.06 | 28.7 |
| Ed Ripley | $737.00 | 25.3 |
| Annie Carroll | $525.00 | 5.6 |
| | **Total Hours:** | **3,885.9**[6] |

The Trial Defendants contend Chevron produces insufficient information to determine the proper amount of attorney fees and there should be no enhancement attorney fees.[7] The Court uses the lodestar method to calculate an award of attorney fees. *See, e.g.*, *Salazar v. Maimon*, 750 F.3d 514, 523 (5th Cir. 2014). Under the lodestar method, the Court determines the reasonable hourly rate for the movant's attorney and the reasonable number of hours expended on the litigation by the movant's attorney. *Cruz v. Maverick Cty.*, 957 F.3d 563, 574 (5th Cir. 2020) (citing *Shipes v. Trinity Indus.*, 987 F.2d 311, 319–20 (5th Cir. 1993)). The lodestar is then calculated by multiplying the reasonable hourly rate by the reasonable number of hours. *Id.* Once the lodestar is initially determined, the Court may adjust the amount upward or downward as necessary to make the award of attorney fees reasonable. *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 228 (5th Cir. 2008). The movant bears the burden of establishing the rate charged and

---

[6] *Plaintiffs' Reply, supra* note 3, Exhibit 1 (*Attorney Time Spreadsheet*).

[7] The Court notes that although the Trial Defendants raise contentions against an enhancement of attorney fees, there is no request by Chevron for an enhancement of attorney fees. *See Plaintiffs' Reply, supra* note 3, at 2–3.

reasonableness of the hours expended. *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996). The Court addresses the hourly rate and number of hours in turn.

A.  *Reasonable Hourly Rate*

Chevron requests hourly rates ranging from $166.00 to $738.09. To determine the reasonable hourly rate for the movant's attorneys, the Court must consider the attorney's regular rate as well as the prevailing market rate, which is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). Evidence of the reasonableness of a proposed hourly rate must include an affidavit of the attorney performing the work and information about rates actually billed and paid in similar lawsuits. *Blum*, 465 U.S. at 896 n.11. However, "[a]n attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates[,] and the rate is not contested." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1087 (S.D. Tex. 2012) (Rosenthal, C.J.) (second alteration in original) (internal quotation marks omitted) (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995)). The Court may also use its own expertise and judgment to make an independent determination of the value of an attorney's services. *Hilton v. Exec. Self*

*Storage Assoc., Inc.*, No. H-06-2744, 2009 WL 1750121, at *9 (S.D. Tex. June 18, 2009) (Rosenthal, C.J.) (citing *Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976)).

Chevron produces the declaration of Craig Stanfield ("Stanfield"), lead counsel for Chevron, in support of the request for attorney fees.[8] In his declaration (the "Stanfield Declaration"), Stanfield attests to the requested hourly rates of each attorney and paralegal.[9] Stanfield further attests the hourly rates are reasonable and customary of, if not lower than, fees routinely charged in comparable cases.[10] Chevron produces evidence as to the qualifications of the thirteen attorneys and one paralegal who worked on the case.[11] The Trial Defendants do not contest the reasonableness of Chevron's requested hourly rates. Instead, the Trial Defendants contend that because Chevron redacted portions of the billing records, the Trial Defendants could not object to the hourly rates. However, Chevron does not request attorney fees in relation to any redacted portions of the billing records.[12]

---

[8] *Declaration of Craig Stanfield in Support of Plaintiffs' Motion for Attorneys' Fees and Costs*, Document No. 283, ¶ 2 [hereinafter *Declaration of Craig Stanfield*].

[9] *Declaration of Craig Stanfield*, *supra* note 8, ¶¶ 9, 11–12, 16.

[10] *Declaration of Craig Stanfield*, *supra* note 8, ¶ 16.

[11] *Declaration of Craig Stanfield*, *supra* note 8, ¶¶ 12a–m.

[12] *See Plaintiffs' Reply*, *supra* note 3, at 2–3.

The Court finds Chevron demonstrates the requested hourly rates are reasonable. The Court will therefore apply these rates to determine the appropriate amount of attorney fees. The Court turns to the time expended.

B. *Reasonable Time Expended*

Chevron requests a total time of 3,885.9 hours.[13] The party seeking attorney fees must present adequately documented time records to the Court. *McClain*, 649 F.3d at 381 (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)). Using this time as a benchmark, the Court should exclude all time that is excessive, duplicative, or inadequately documented. *Id.* (citing *Watkins*, 7 F.3d at 457). The hours surviving this vetting process are those reasonably expended in the litigation. *See id.* (citing *Watkins*, 7 F.3d at 457). The Court examines both "whether the total number of hours claimed were reasonable and whether specific hours claimed were reasonably expended." *LULAC v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997).

Chevron requests a fee based on 3,885.9 total hours expended by thirteen attorneys and one paralegal.[14] In support, Chevron produces the Stanfield Declaration and associated billing records, which explain the services rendered and the time, to the tenth of an hour, expended on each service.[15] The Trial Defendants

---

[13] *See supra* Part II, pgs. 4–5.

[14] *See supra* Part II, pgs. 4–5.

[15] *Declaration of Craig Stanfield, supra* note 8, Exhibits 1–29 (*Billing Records*).

8

do not contest the number of hours requested by Chevron. Instead, the Trial Defendants contend that because Chevron redacted portions of the billing records, the Trial Defendants could not object to the number of hours. However, Chevron does not request attorney fees in relation to any redacted portions of the billing reports.[16] The Court finds Chevron demonstrates the requested hours are reasonable. The Court turns to calculate the amount of attorney fees.

C.   *Calculation of the Lodestar*

The lodestar is calculated by multiplying the reasonable hourly rate by the reasonable number of hours expended on the litigation. *Cruz*, 957 F.3d at 574 (citing *Shipes*, 987 F.2d at 311). Having determined the reasonable hourly rate and the reasonable number of hours expended, the Court calculates the lodestar as follows:

| **Billing Individual** | **Average Rate** | **Hours** | **Lodestar** |
|---|---|---|---|
| Christie Cardon | $608.98 | 1,392.5 | $848,006.50 |
| Abby Parsons | $633.00 | 807.4 | $511,084.20 |
| Craig Stanfield | $738.09 | 521.3 | $384,765.30 |
| Kayla Miller | $251.08 | 511.1 | $128,326.10 |
| Samantha Ade | $578.00 | 175.3 | $101,323.40 |
| Robert Sheppard | $514.87 | 143.9 | $74,089.70 |

---

[16] *See Plaintiffs' Reply, supra* note 3, at 2–3.

| | | | |
|---|---|---|---|
| Bruce Hurley | $709.73 | 111.3 | $78,993.40 |
| Shauna Hentrel | $200.00 | 44.5 | $8,900.00 |
| Jason Mattox | $293.00 | 43.6 | $12,774.80 |
| Thomas McCall | $166.00 | 40.7 | $6,756.20 |
| Emily Hogue | $191.00 | 34.7 | $6,627.70 |
| Kathleen McCarthy | $713.06 | 28.7 | $20,464.80 |
| Ed Ripley | $737.00 | 25.3 | $18,646.10 |
| Annie Carroll | $525.00 | 5.6 | $2,940.00 |
| **Total:** | | **3,885.9** | **$2,203,698.20** |

D.  *Adjustment of the Lodestar*

There is a strong presumption that the lodestar is reasonable, and it should be modified only in exceptional cases. *Watkins*, 7 F.3d at 458 (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)). When deciding whether to make an adjustment to the lodestar, the Court considers the factors articulated in *Johnson v. Georgia Highway Express, Inc.*, which are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services; (4) the preclusion of other potential employment by the attorney; (5) the customary fee charged for similar services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience,

reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d 714, 717–19 (5th Cir. 1974). However, the most critical factor in the analysis is the "degree of success obtained." *Martinez v. Ranch Masonry, Inc.*, 760 F. App'x 288, 290 (5th Cir. 2019). Moreover, some of the factors are often subsumed in the initial lodestar calculation; therefore, the Court does not generally consider factors that were already taken into account during the initial lodestar calculation when deciding whether to adjust the loadstar. *In re Pilgrim's Pride Corp.*, 690 F.3d 650, 659 (5th Cir. 2012).

The Court has carefully considered each of the *Johnson* factors as applied to this case and determines that their consideration is accurately reflected in the lodestar. Taking into account the strong presumption of the reasonableness of the lodestar and the fact that there is no objection to the lodestar calculation, the Court concludes no adjustment to the lodestar is necessary. Accordingly, the motion for attorney fees and costs is granted as to an award of $2,203,698.20 in attorney fees.

E.  Costs

Chevron further seeks $62,392.93 in costs. "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The Court presumes "that the prevailing party will be awarded costs." *Pacheco v. Mineta*, 448 F.3d 783,

793 (5th Cir. 2006). Although the prevailing party is *prima facie* entitled to recover costs, when costs are contested, the recovering party bears the burden of proving the costs were necessarily incurred in the case. *Fogleman v. ARAMCO*, 920 F.2d 278, 285–86 (5th Cir. 1991). Whether costs were necessarily incurred in the case is a question of fact committed to the discretion of the Court. *Id.* Chevron produces itemized invoices and receipts as evidence of costs, and the Stanfield Declaration states these costs were reasonable and necessary to litigate this case.[17] Further, the Trial Defendants do not contest Chevron's requested costs. The Court finds Chevron demonstrates its entitlement to the requested costs. Accordingly, the motion for attorney fees and costs is granted as to an award of $62,392.93 in costs.[18]

### III. CONCLUSION

Based on the foregoing, the Court hereby

---

[17] *Declaration of Craig Stanfield, supra* note 8, ¶ 18, Exhibits 43–85 (*Cost Receipts*).

[18] On July 21, 2020, the Trial Defendants filed a surreply (the "Surreply") to Chevron's reply in support of the motion for attorney fees and costs. *Defendants Sariel Petroleum LLC, Arael Doolittle, and Alvin Diaz's Response to Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs*, Document No. 286. The Trial Defendants did not seek the Court's leave before filing the Surreply. The Court therefore does not consider the Surreply. *See, e.g., McClyde v. Jackson*, No. H-07-4244, 2010 WL 519763, at *9 (S.D. Tex. Feb. 9, 2010) (Ellison, J.) (striking surreply filed without leave of court), *aff'd by* 405 F. App'x 891 (5th Cir. 2010) (per curiam).

**ORDERS** that Plaintiffs' Motion for Attorneys' Fees and Costs (Document No. 282) is **GRANTED** as to an award of **$2,203,698.20** in attorney fees and **$62,392.93** in costs.

SIGNED at Houston, Texas, on this __23__ day of July, 2020.

                                                                            _/s/ David Hittner_
                                                                            DAVID HITTNER
                                                                            United States District Judge